# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

PEOPLE v JACKSON

Docket No. 149798.  Argued May 5, 2015.  Decided July 28, 2015.

Timothy W. Jackson was convicted by a jury in the Wayne Circuit Court of six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (1)(b)(*iii*), for sexually abusing a young member of the church where he served as pastor.  The abuse occurred while the complainant was serving as a "youth nurse" to defendant, and came to light when the complainant's aunt—who was a parishioner at the church, and had previously served as a nurse to defendant—asked the complainant about her relationship with defendant.  At trial, the complainant's aunt testified that she had approached the complainant to discuss the possible abuse in light of her own experiences and after talking with another woman who had also served as a nurse to defendant and had subsequently left the church.  Defense counsel objected and moved for a mistrial, arguing that this testimony indicated that defendant had engaged in sexual relationships with the complainant's aunt and her acquaintance, and was inadmissible evidence of other acts under MRE 404(b).  The trial court, James A. Callahan, J., overruled the objection and denied the motion, ruling that admissibility of the testimony was not governed by MRE 404(b) because the testimony was not evidence that defendant had engaged in prior sexual conduct with underage parishioners.  The Court of Appeals, JANSEN, P.J., and OWENS, J. (SHAPIRO, J., concurring), affirmed in an unpublished opinion per curiam issued April 10, 2014 (Docket No. 310177), holding that although the testimony was evidence of other acts under MRE 404(b), it fell within an exception to that rule for res gestae evidence and thus could be admitted without reference to or compliance with the rule.  The Supreme Court ordered and heard oral argument on whether to grant defendant's application or take other peremptory action.  497 Mich 930 (2014).

In a unanimous opinion by Justice MCCORMACK, the Supreme Court *held*:

The Court of Appeals erred by holding that the testimony at issue could be admitted without reference to or compliance with MRE 404(b) by virtue of a "res gestae exception" to that rule.  There is no "res gestae exception" to MRE 404(b), nor does the definition of "res gestae" set forth in *People v Delgado*, 404 Mich 76 (1978), or *People v Sholl*, 453 Mich 730 (1996), delineate the limits of that rule's applicability.  To the extent that previous Court of Appeals cases have held otherwise, they are overruled.  Because the testimony at issue constituted evidence of other acts under MRE 404(b), its admission was governed by that rule and its procedural requirements.  However, the Court of Appeals correctly determined that the

defendant's convictions should be affirmed because defendant failed to show that he was entitled to relief on the basis of this error.

1. The plain language of MRE 404(b) limits the rule's scope to evidence of other crimes, wrongs, or acts that are contemporaneous with, or prior or subsequent to, the conduct at issue in the case and may be offered to prove the character of a person in order to show action in conformity therewith. Thus, by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts other than the conduct at issue in the case that risks an impermissible character-to-conduct inference. Acts comprised by or directly evidencing the conduct at issue are not subject to scrutiny under MRE 404(b). The conduct at issue in the instant case was defendant's charged acts of criminal sexual conduct against the complainant. Defendant's prior relationships with the complainant's aunt and her acquaintance plainly did not constitute, directly evidence, or contemporaneously facilitate the commission of this conduct. Rather, the testimony regarding those prior relationships was offered to provide inferential support for the conclusion that the charged conduct did, in fact, occur as alleged, and that those allegations were not fabricated. Such evidence fell within the prevailing and established scope of "other acts" contemplated by MRE 404(b), and the propriety of its inferential support was subject to scrutiny under that rule.

2. The trial court erred by ruling that the challenged testimony was too vague and nonspecific to constitute evidence of other acts. Although the complainant's aunt did not expressly state that defendant had engaged in sexual conduct with her and her acquaintance, her testimony clearly indicated as much, and in fact, the offered relevance of her testimony turned on the role this prior sexual conduct played in her decision to approach the complainant. While the testimony's level of detail regarding this prior conduct bore on its admissibility under MRE 404(b), the testimony constituted evidence of other acts and its admission was governed by that rule.

3. The trial court erred by deeming MRE 404(b) inapplicable because the testimony involved women who were above the age of consent at the time of their prior relationships with defendant. This was not factually established and, in any event, had no bearing on whether the testimony was subject to MRE 404(b). The rule does not limit its reach to evidence of other criminal conduct; rather, it expressly contemplates evidence of other crimes, wrongs, or acts that may give rise to an impermissible character-to-conduct inference. Evidence that defendant had previously engaged in sexual relationships with other parishioners, above or below the age of consent, fell well within this scope of coverage.

4. The Court of Appeals majority erred by holding that the challenged testimony fell within a "res gestae exception" to MRE 404(b). The plain language of MRE 404(b) sets forth no such exception from its coverage, nor was such an exception created in *Delgado* or *Sholl*, which provide a definition for potentially admissible "res gestae" evidence but which do not purport to exempt all evidence meeting that definition from scrutiny under MRE 404(b). This definition of "res gestae" also does not provide an apt delineation the boundaries of MRE 404(b)'s applicability; to the contrary, it is readily susceptible to a broad reading that significantly overlaps with the established scope of MRE 404(b), which risks unduly eroding the rule's plainly stated scope and undermining its procedural protections. MRE 404(b) applies to evidence of crimes, wrongs, or acts other than the conduct at issue in the case that may give rise to a

character-to-conduct inference. In this case, the prior sexual relationships to which the challenged testimony referred plainly did not constitute the conduct at issue, nor did they directly evidence or contemporaneously facilitate its commission; instead, they were offered to provide inferential support for the conclusion that the conduct at issue occurred as alleged. Accordingly, the admissibility of that testimony was governed by MRE 404(b).

5. Defendant was not entitled to relief based on the erroneous handling of the challenged testimony because the error was harmless. The testimony was logically relevant to a material fact in the case as required by MRE 401 and MRE 402 and was offered for the proper, nonpropensity purpose of explaining the timing and circumstances of the complainant's disclosure of the alleged abuse to her aunt, which was necessary to counter defendant's theory that the complainant's allegations of abuse were fabricated at the behest of the complainant's aunt. Further, the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice under MRE 403 because the testimony was tailored to its proper purpose and did not delve into unnecessary detail or unduly invite the jury to draw an impermissible character-to-conduct inference from it. Therefore, the testimony was substantively admissible under MRE 404(b), notwithstanding the trial court's failure to properly analyze it under that rule. And while defendant was not provided proper pretrial notice of the testimony as required by MRE 404(b)(2), he has not shown outcome-determinative prejudice from that error. The lack of proper pretrial notice under MRE 404(b)(2) did not result in the admission of substantively improper other-acts evidence. Although defendant was not afforded an opportunity to marshal arguments against its admission before it was introduced at trial, he did not show that any such arguments would have been availing or would have affected the scope of testimony ultimately presented to the jury. While defendant suffered unfair surprise from the unexpected introduction of this testimony at trial, he was aware of the general version of events in the challenged testimony before trial and did not demonstrate how he would have approached trial or presented his defense differently with proper notice of the proposed testimony. Lastly, irrespective of the challenged testimony, the other evidence of defendant's guilt was overwhelming. The complainant testified at length and in detail regarding defendant's alleged acts of abuse, and her account was corroborated not only by other witness testimony but also by substantial objective evidence for which defendant had no colorable explanation or response. Accordingly, the erroneous handling of the challenged testimony did not undermine the reliability of the verdict.

Convictions affirmed; Court of Appeals opinion vacated in part.

©2015 State of Michigan

# OPINION

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

FILED  July 28, 2015

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 149798

TIMOTHY WARD JACKSON, a/k/a
TIMOTHY WARD-JACKSON,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MCCORMACK, J.

The defendant, Timothy Ward Jackson, was convicted by a jury of six counts of first-degree criminal sexual conduct (CSC-I), for sexually abusing a 12- to 13-year-old member of the church where he served as a pastor.[1]  Before us is whether certain

---

[1] The defendant was convicted of three counts of CSC-I under MCL 750.520b(1)(a) (victim less than 13 years of age), and three counts of CSC-I under MCL 750.520b(1)(b)(*iii*) (coercion by use of authority).

testimony regarding prior sexual relationships the defendant had with other parishioners constituted evidence of "other acts" under MRE 404(b) and, if so, whether that testimony could be admitted without reference to or compliance with MRE 404(b) by virtue of a "res gestae exception" to that rule. We agree with the Court of Appeals that the testimony was other-acts evidence as contemplated by MRE 404(b), and that the trial court erred in concluding otherwise. We disagree with the Court of Appeals majority, however, that the trial court's failure to subject the testimony to scrutiny under MRE 404(b) was nonetheless correct because the testimony fell within a "res gestae exception" to that rule. By its plain language, MRE 404(b) creates no such exception from its coverage. Accordingly, because the testimony at issue constituted evidence of "other acts" as contemplated by MRE 404(b), its admission was governed by that rule and its procedural requirements. We agree, however, with the Court of Appeals' determination that the defendant's convictions should be affirmed, as the defendant has failed to show entitlement to relief on the basis of this error. We therefore affirm the defendant's convictions, but vacate that portion of the opinion of the Court of Appeals majority reasoning that the testimony at issue could be admitted without reference to or compliance with MRE 404(b) by virtue of a "res gestae exception" to that rule.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The defendant's six CSC-I convictions arose from allegations that he repeatedly engaged in sexual intercourse and fellatio with the complainant, a female parishioner at

2

his church, while she was 12 to 13 years old and serving as one of his "youth nurses."[2] The abuse was alleged to have occurred on a regular basis for approximately a year, until the complainant disclosed it to her aunt, Jacklyn Price, who was also a parishioner in the same church. This disclosure triggered a police investigation, which in turn led to the institution of the charges of which the defendant was ultimately convicted.

At trial, the complainant testified to the alleged abuse; the prosecution also offered testimony from Price and the complainant's mother, as well as other testimony and physical evidence corroborative of the complainant's version of events. The defendant testified in his own defense, denying the allegations in full, questioning the complainant's credibility, and asserting that Price had fabricated the allegations and manipulated the complainant out of spite toward the defendant for refusing to preside over Price's marriage to a non-Christian man. The defendant pointed to the year-long delay in the complainant's disclosure of the alleged abuse as supporting his claim that the allegations were false. The defendant also offered testimony from other parishioners, including former youth nurses, to corroborate his version of events.

Price's trial testimony is central to the claim of error before us, and bears elaboration. The prosecutor's direct examination of Price focused on developing the circumstances and events surrounding the complainant's disclosure of the alleged abuse to her. Price testified that she started attending the defendant's church when she was 15,

_____

[2] As a youth nurse, the complainant was responsible for attending to the defendant and assisting him with various matters before, during, and after church services; she was also frequently alone with the defendant in his church office and traveled with him for certain church functions.

and at one point had served as a nurse for the defendant; she had subsequently left the church for a few years on two occasions, but had since returned and was an active member at the time of the complainant's disclosure. This disclosure came on the heels of a conversation that Price had initiated with the complainant after a morning church service. According to Price, she "had a specific motive" for initiating this conversation: to "see[] if [the complainant] had been touched in any sexual way" by the defendant. Price acknowledged that she had not "notice[d] anything out of the ordinary" in the defendant's interactions with the complainant. She explained, however, that roughly a month prior to her conversation with the complainant, she had fallen back in touch with a woman named Latoya Newsome, who had formerly been a parishioner at the church and had been a friend of Price's and a fellow nurse to the defendant. Newsome, however, had left the church for reasons unknown to Price at the time, and according to Price, "every time I would ask somebody about her and where was she, it was almost like quiet and secret as if I had said something wrong by bringing her name up." Price had not heard from Newsome for years, which Price believed was because Newsome "didn't want anything to do with me or the church." Price testified that, when the two fell back in touch, she expressed this belief to Newsome, and Newsome offered a response that "[a]ffected me badly – very, very badly." This, according to Price, prompted her to approach the complainant.

Price then testified to the substance of her conversation with the complainant. Price started the conversation with small-talk about the complainant entering high school and developing into a young woman. She then told the complainant "that there was some things that I experience[d] when I was a little younger, that I didn't say anything to

4

anybody about because I was embarrassed, and I didn't know what would happen," and that the complainant should "say something to somebody" if anyone touches her in a way that makes her "feel bad . . . , because it's not supposed to be that way."  The complainant then disclosed the alleged abuse to Price, and Price in turn told the complainant's mother. According to Price, her "exact words" to the mother were that "this cannot happen. There was some things that happened to me and I know wasn't right, and I didn't say anything, and I buried it.  And I'm not going to let this happen to my niece. . . .  He touched the wrong one."  The court later questioned Price on this topic as well:

> *The Court*: "All right.  Because of this conversation that you had with [Newsome], why did you want to talk to your niece?"

> *Price*: "Because [Newsome] said some things to me that kind of – there was some similarities of what she –"

> *The Court*: "What do you mean?  Hold on for one second.  Did you ever see any familiarity between your niece and [the defendant] before you sat down an[d] spoke with her in [her] mother's car."

> *Price*: "No; not that I seen."

During Price's direct examination, defense counsel objected and moved for a mistrial; counsel later renewed this motion.  The trial court heard argument on the objection and motion outside the presence of the jury, and ultimately rejected both. Defense counsel argued that Price's testimony regarding her decision to approach the complainant constituted impermissible other-acts evidence under MRE 404(b)(1) because the testimony clearly indicated that the defendant had previously engaged in sexual relations with Price and Newsome, and gave rise to the improper inference that the defendant had a propensity to abuse his position of authority over his parishioners in the manner alleged in the instant case.  Defense counsel also stressed that the prosecution had

5

not provided any notice of intent to introduce this testimony, as required under MRE 404(b)(2), and had instead represented to defense counsel at the start of trial that Price had been instructed not to bring the matter up. The prosecutor argued that the testimony was not other-acts evidence governed by MRE 404(b) because it did not identify any specific acts performed by the defendant and did not purport to demonstrate that the defendant had engaged in prior sexual conduct with underage parishioners.[3] The prosecutor further argued that Price's testimony was offered for a proper purpose under MRE 404(b)—to counter the defendant's theory of fabrication by explaining why Price approached the complainant when she did—and that the testimony had been limited to this proper purpose. As to notice, the prosecutor argued that it was not required because the testimony was not governed by MRE 404(b), and also that defense counsel was well aware before trial of the defendant's purported history of sexual conduct with other parishioners (including Price and Newsome) and the role this history played in Price's conversation with the complainant.

The trial court agreed with the prosecution that Price's testimony did not implicate MRE 404(b) because it did not provide evidence of prior bad acts by the defendant— namely, prior sexual conduct with underage parishioners—given that Price was above the

---

[3] The prosecutor explained to the court that Price had apparently engaged in "kissing and heavy petting" with the defendant, but was above the age of consent at the time. Neither the prosecutor nor defense counsel knew the details of whatever sexual relationship the defendant may have had with Newsome, including whether she was underage at the time. The prosecutor indicated that efforts to locate and contact Newsome had proved unsuccessful.

age of consent at the time of her prior relationship with the defendant and her testimony did not provide any specifics regarding that relationship. The court made clear that defense counsel was free to recall Price to the stand and question her about any such details, and could call other witnesses to further explore the defendant's sexual history; the court, however, declined defense counsel's request to delay the trial to pursue any such further measures.

The jury convicted the defendant as charged. On appeal, the defendant raised a number of challenges to these convictions in the Court of Appeals, including that the trial court erred in admitting Price's testimony regarding her and Newsome's prior relationships with him. The Court of Appeals unanimously affirmed the defendant's convictions, but disagreed regarding whether the trial court erred in its handling of Price's testimony. *People v Jackson*, unpublished opinion per curiam of the Court of Appeals, issued April 10, 2014 (Docket No. 310177). The panel unanimously rejected the trial court's conclusion that Price's testimony was not evidence of "other acts" as contemplated by MRE 404(b). A majority of the panel, however, determined that the testimony was nonetheless admissible without regard to MRE 404(b) because it fell within a "res gestae exception" to that rule, given that "[t]he jury was entitled to know why Price decided to ask the victim whether she had been touched" and Price's testimony "was necessary to explain the sequence of events leading up to [her] conversation with the [complainant]." The majority correspondingly found no error in the prosecution's failure to provide "reasonable notice" of the testimony under MRE 404(b)(2), as such notice is not required "when the evidence [the prosecution] intends to present falls within the res gestae exception to MRE 404(b)." The majority further explained that, even if

7

such notice were required, "the failure to provide [it] could not have prejudiced the defense, which was aware of Price's testimony regarding [the] defendant's past relationships as early as the preliminary examination."

Judge SHAPIRO concurred. He disagreed with the majority that Price's testimony was exempt from MRE 404(b), including its notice requirement, by virtue of a "res gestae exception" to the rule, noting that the majority cited no authority to support that proposition and the rule itself did not suggest it. He concluded, however, that this error did not entitle the defendant to relief because "[t]he testimony in question was brief and general and, given the extensive inculpatory evidence, it is difficult to see how the possibility that [the] defendant previously had an affair with an adult woman, even if 'inappropriate' in some sense, was a serious consideration of the jury, let alone the determinative factor that led them to convict him of the repeated sexual abuse of a 12- to 13-year-old girl."

The defendant then filed the instant application for leave to appeal, seeking this Court's review of the admission of Price's testimony. We heard oral argument on the application after directing the parties to address the following issues:

> (1) whether the challenged testimony of Jacklyn Price regarding the defendant's prior sexual relationships was admissible res gestae evidence; (2) if so, whether the prosecutor was required to provide notice pursuant to MRE 404(b)(2); and (3) whether, if notice was required, any failure in this regard was prejudicial error warranting reversal. [*People v Jackson*, 497 Mich 930 (2014).]

## II. LEGAL BACKGROUND

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494

8

Mich 713, 722; 835 NW2d 399 (2013).  A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence.  *Id*. at 723.  We review such questions of law de novo.  *Id*.  "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict."  *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citations omitted).

"When construing court rules, including evidentiary rules, this Court applies the same principles applicable to the construction of statutes."  *Duncan*, 494 Mich at 723. "Accordingly, we begin with the rule's plain language," and if that language is unambiguous, we enforce its "plain meaning without further judicial construction."  *Id*.

MRE 404(b) provides:

> (b) Other crimes, wrongs, or acts.

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

> (2) The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

9

*People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), sets forth the prevailing framework for analyzing the admissibility of "[e]vidence of other crimes, wrongs, or acts" under MRE 404(b). As this Court explained then and has consistently reaffirmed since, MRE 404(b) "is a rule of legal relevance" that "limits only one category of logically relevant evidence": "[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible." *Id.* at 61-63. " 'Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged.' " *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012), quoting *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). MRE 404(b) governs but does not prohibit all evidence of other acts that risks this character-to-conduct inference; the rule "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010); see, e.g., *Watkins*, 491 Mich at 468 ("MRE 404(b) requires the exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense."); *People v Sabin* (*After Remand*), 463 Mich 43, 56; 614 NW2d 888 (2000) ("The *VanderVliet* analytical framework reflects the theory of multiple admissibility on which MRE 404(b) is founded."). Accordingly,

> To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the

10

defendant's character or relevant to his propensity to act in conformance with his character. The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant solely to the defendant's character or criminal propensity. . . . Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes. [*Mardlin*, 487 Mich at 615-616 (footnotes omitted).][4]

---

[4] Before this Court's decision in *VanderVliet*, there had been some confusion regarding the general scope and nature of MRE 404(b)'s rule of admissibility for other-acts evidence. As explained in *VanderVliet*, this confusion stemmed from the mischaracterization of MRE 404(b) as "a rule of general exclusion allowing admission of other acts evidence only for the purposes set forth in the rule" and only if it satisfied particular criteria set forth in an earlier decision from this Court, *People v Golochowicz*, 413 Mich 298, 308; 319 NW2d 518 (1982). *VanderVliet*, 444 Mich at 65. As a result of this mischaracterization, other-acts evidence that was logically relevant and properly offered for a nonpropensity purpose nonetheless could not be admitted under MRE 404(b)—an analytical incongruity that courts struggled to reconcile. See, e.g., *People v Hall*, 433 Mich 573, 585-588; 447 NW2d 580 (1989) (plurality opinion of BOYLE, J.) (characterizing this restrictive interpretation of MRE 404(b) as misguided, and explaining why the evidence at issue would be admissible under a proper understanding of the rule even though it did not satisfy the *Golochowicz* test). *VanderVliet* expressly dispelled this mischaracterization and its resulting incongruity, emphasizing that MRE 404(b) reflects an "inclusionary theory of admissibility" and clarifying that, while "*Golochowicz* identifie[d] the requirements of logical relevance [for other-acts evidence] when the proponent is utilizing a *modus operandi theory* to prove *identity*," that case did "not set the standard for the admissibility of other acts evidence" and "the courts of this state, including this Court, . . . have been too quick to recite the *Golochowicz* test even when it was probably inapplicable." *VanderVliet*, 444 Mich at 65-66, 67 n 17.

11

In light of the "inherent complexity" in applying this framework to the various circumstances and scenarios that may arise in a "modern day trial," this Court has adopted a pretrial notice requirement, first set forth in *VanderVliet* and now codified in MRE 404(b)(2), "[t]o assist the trial court in this extraordinarily difficult context and to promote the public interest in reliable fact finding." *VanderVliet*, 444 Mich at 87, 89. Requiring the prosecution to give "pretrial notice of its intent to introduce other acts evidence at trial" is designed to "promote[] reliable decision making," to "prevent[] unfair surprise," and to "offer[] the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice." *Id*. at 89, 89 n 51 (1994); see *Sabin*, 463 Mich at 60 n 6. The notice must be "reasonable" and provided before trial, but may be provided "during trial if the court excuses pretrial notice on good cause shown." MRE 404(b)(2). And as its plain terms make clear, this notice requirement is coextensive with and reflective of MRE 404(b)'s inclusionary nature, applying to "any [other-acts] evidence" the prosecution in a criminal case "intends to introduce at trial," regardless of whether "the rationale . . . for admitting the evidence" is "mentioned in subparagraph (b)(1)."

## III. ANALYSIS

At issue is whether and to what extent MRE 404(b), including its notice requirement, governs the admissibility of Price's testimony regarding the defendant's prior relationships with her and Newsome. As summarized above, the trial court concluded that the testimony did not constitute evidence of "other acts" under MRE 404(b); the Court of Appeals unanimously rejected that conclusion, but a majority of the

12

panel nonetheless determined that the testimony could be admitted without regard to MRE 404(b) by virtue of a "res gestae exception" to the rule. We agree with the Court of Appeals on the former point, but disagree with the Court of Appeals majority on the latter.

## A. PRICE'S TESTIMONY CONSTITUTED EVIDENCE OF "OTHER ACTS" AS CONTEMPLATED BY MRE 404(b)

We begin with the plain language of MRE 404(b), *Duncan*, 494 Mich at 723, which, as set forth above, limits the rule's scope to "[e]vidence of other crimes, wrongs, or acts" that "are contemporaneous with, or prior or subsequent to the conduct at issue in the case" and may be offered "to prove the character of a person in order to show action in conformity therewith."[5] Thus, by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts "other" than the "conduct at issue in the case" that risks an impermissible character-to-conduct inference. Correspondingly, acts comprised by or directly evidencing the "conduct at issue" are not subject to scrutiny under MRE 404(b). See, e.g., *Mardlin*, 487 Mich at 616 n 10 (noting that "MRE 404(b) is not even implicated if the prosecution seeks to introduce logically relevant evidence of other acts performed by the defendant if the evidence does not generate an intermediate inference as to his character"), citing *VanderVliet*, 444 Mich at 64; *People v Houston*, 261 Mich App 463,

---

[5] The phrase "conduct at issue" was added to the rule in 1991, to replace the phrase "the crime charged," and to thereby clarify that "[t]he rule applies in civil cases even though it is used more often in criminal cases." MRE 404, Note to 1991 Amendment, 437 Mich cci. See also, e.g., *People v Starr*, 457 Mich 490, 499; 577 NW2d 673 (1998) (noting that "MRE 404(b) specifically addresses the admissibility of *uncharged* conduct").

468-469; 683 NW2d 192 (2004) aff'd on other grounds 473 Mich 399; 702 NW2d 530 (2005) (explaining that "MRE 404(b) was not implicated" in the admission of evidence that, three days before the charged offense, the defendant possessed a firearm like the one used in the charged offense, as such evidence "was directly relevant to identifying [the] defendant as the killer" and "did not operate through an intermediate inference"). Other jurisdictions are in accord with this understanding, aptly explaining that evidence of acts other than the charged conduct is "intrinsic" to that conduct and thus not subject to 404(b) scrutiny if the uncharged acts "directly prove[] the charged offense" or if they "were performed contemporaneously with" the charged offense and "facilitated [its] commission." *United States v Green*, 617 F3d 233, 248-249 (CA3, 2010) (quotation marks omitted); e.g., *State v Ferrero*, 229 Ariz 239, 243; 274 P3d 509 (2012); *State v Rose*, 206 NJ 141, 180; 19 A3d 985 (2011); *United States v Bowie*, 344 US App DC 34, 40; 232 F3d 923 (2000).

As the Court of Appeals correctly recognized, the "conduct at issue" in the instant case was the defendant's charged acts of criminal sexual conduct against the complainant. The defendant's prior relationships with Price and Newsome plainly did not constitute, directly evidence, or contemporaneously facilitate the commission of this conduct. Rather, Price's testimony regarding those prior relationships was offered to provide inferential support for the conclusion that the charged conduct did, in fact, occur as alleged, and that those allegations were not fabricated. Such evidence falls comfortably within the prevailing and established scope of "other acts" contemplated by MRE 404(b), and the propriety of its inferential support is subject to scrutiny under that rule. See *People v Starr*, 457 Mich 490, 494-496; 577 NW2d 673 (1998) (recognizing, in

14

a case charging the defendant for the sexual abuse of his daughter, that testimony regarding the defendant's prior sexual abuse of his half-sister constituted evidence of "other acts" subject to scrutiny under MRE 404(b)); see also *VanderVliet*, 444 Mich at 87 (confirming that MRE 404(b) effectuates the notion "that other acts evidence must move through a permissible intermediate inference . . . to be relevant to actus reus" and that, "[a]bsent such an intermediate inference, the other acts evidence bears only on propensity and is inadmissable"); *People v Engelman*, 434 Mich 204, 215-217; 453 NW2d 656 (1990) (discussing MRE 404(b)'s role in determining whether evidence of other acts "tends to establish some intermediate inference, other than the improper inference of character, which is in turn probative of . . . the commission of the [alleged criminal] act").

Like the Court of Appeals, we are not persuaded by the trial court's reasoning to the contrary. First, we disagree with the trial court that Price's testimony regarding her and Newsome's prior relationships with the defendant was too vague and nonspecific to constitute evidence of "other acts." Although Price did not expressly state that the defendant engaged in sexual conduct with her and Newsome, her testimony clearly indicated as much. Indeed, as discussed below, the offered relevance of her testimony turned on the role this prior sexual conduct played in Price's decision to approach the complainant. Thus, while (as also discussed below) the testimony's level of detail regarding this prior conduct may bear on its admissibility under MRE 404(b), the testimony constituted evidence of "other acts" whose admission was governed by that rule.

Similarly, the trial court erred in deeming MRE 404(b) inapplicable because Price and Newsome were above the age of consent at the time of their prior relationships with

15

the defendant. While the parties appear to agree this was true as to Price, neither party seems to know precisely how old Newsome may have been at the relevant time. Regardless, we do not see how Price's and Newsome's ages at the time of these relationships impacts whether Price's testimony is subject to MRE 404(b). The rule does not limit its reach to evidence of other criminal conduct; rather, it expressly contemplates evidence of "other crimes, wrongs, or acts" that may give rise to an impermissible character-to-conduct inference. Evidence that the defendant previously engaged in sexual relationships with other parishioners, above or below the age of consent, falls well within this scope of coverage.

Accordingly, we agree with the Court of Appeals that the trial court erred in its interpretation of MRE 404(b), and in its corresponding conclusion that Price's testimony did not constitute evidence of "other acts" as contemplated by that rule.

## B. THERE IS NO "RES GESTAE EXCEPTION" TO MRE 404(b)

Despite properly recognizing Price's testimony as evidence of "other acts" under MRE 404(b), the Court of Appeals majority concluded that the trial court did not ultimately err in admitting the testimony without reference to or compliance with that rule. According to the Court of Appeals majority, Price's testimony fell within a "res gestae exception" to MRE 404(b), which rendered the rule, and its notice requirement, inapplicable. We cannot agree with this analysis and conclusion.

We begin once again with the plain language of MRE 404(b), which sets forth no such "res gestae exception" from its coverage. Nor do we see any basis for reading one into the rule. In concluding otherwise, the Court of Appeals majority looked to this

16

Court's decisions in *People v Delgado*, 404 Mich 76; 273 NW2d 395 (1978), and *People v Sholl*, 453 Mich 730; 556 NW2d 851 (1996). We do not read either decision, however, as creating a "res gestae exception" for evidence of "other acts" under MRE 404(b), contrary to the plain language of the rule.

In *Delgado*, the defendant was charged for the delivery of heroin to an undercover police officer. At trial, the prosecution introduced evidence regarding a separate delivery of heroin the defendant had made to this same officer a few days earlier, successfully arguing that it was admissible under MCL 768.27.[6] This Court affirmed the admission of this evidence of the uncharged prior sale,[7] but found it "unnecessary to decide whether the evidence was admissible under [MCL 768.27] and intimate[d] no view with respect

---

[6] MCL 768.27 provides:

> In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.

At the time of the defendant's trial in *Delgado*, MRE 404(b) had not yet been enacted; the rule became effective on March 1, 1978.

[7] The defendant had initially been charged for the prior sale in a separate information; the prosecution moved to consolidate that case with the one pertaining to the subsequent sale, but the trial court denied the motion on the basis that the sales constituted two separate transactions. The prosecution thereafter dismissed the case pertaining to the prior sale. See *Delgado*, 404 Mich at 79-80, 80 n 2.

17

thereto." *Delgado*, 404 Mich at 84. Instead, this Court reasoned that the evidence of the prior sale was "properly before the jury" because it was "inextricably related" to the charged offense, which "[q]uite literally . . . followed from the sale [preceding it], as does an effect follow from a cause," and "[t]he jurors were entitled to have before them the facts concerning the [prior sale] as an integral part of the events which were incidental to the" charged offense. *Id.* This Court supported that conclusion with the following general explanation:

> It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence. . . .

> Stated differently:

> Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime. [*Id.* at 83 (quotation marks and citations omitted).]

This Court reiterated and relied upon this general definition in *Sholl*, which involved a defendant charged with third-degree criminal sexual conduct in connection with a sexual encounter between him and his then girlfriend. At trial, the prosecution offered evidence that the defendant had been using marijuana on the evening in question; the court had ruled before trial that this evidence could be admitted to impeach the defendant's memory of the encounter, but did not subsequently instruct the jury that the evidence could be considered only for this limited purpose. The Court of Appeals found

18

error in the trial court's failure to provide such an instruction. This Court rejected that

conclusion, however, quoting the *Delgado* standard above and explaining that, while

"there are substantial limits on the admissibility of evidence concerning other bad acts,"

> it is essential that prosecutors and defendants be able to give the jury an
> intelligible presentation of the full context in which disputed events took
> place. The presence or absence of marijuana could have affected more than
> the defendant's memory. It could have affected the behavior of anyone
> who used the drug. Further, inferences made by a person about the
> intended conduct of another might have been affected by the person's
> knowledge that the other's conduct was taking place in a setting where
> illegal drugs were being used.
>
> In this case, a jury was called upon to decide what happened during
> a private event between two persons. The more the jurors knew about the
> full transaction, the better equipped they were to perform their sworn duty.
> [*Sholl*, 453 Mich at 741-742.]

Courts have frequently looked to *Delgado* and *Sholl* for guidance when assessing

whether certain evidence is part of the "res gestae" of a charged offense,[8] and some, like

the Court of Appeals majority here, have relied upon them in recognizing a "res gestae

exception" to MRE 404(b).[9] We agree that *Delgado* and *Sholl* provide firm support for

the notion that evidence meeting their "res gestae" definition is potentially relevant and

---

[8] See, e.g., *People v Cash*, 419 Mich 230, 249; 351 NW2d 822 (1984); *People v Maxson*, 181 Mich App 133, 136; 449 NW2d 422 (1989); *People v Bostic*, 110 Mich App 747, 749-750; 313 NW2d 98 (1981).

[9] See, e.g., *People v Malone*, 287 Mich App 648, 661-662; 792 NW2d 7 (2010); *People v Crowell*, 186 Mich App 505, 508; 465 NW2d 10 (1990); *People v Robinson*, 128 Mich App 338, 340; 340 NW2d 303 (1983). To the extent that such caselaw holds that there is a "res gestae exception" to MRE 404(b), and thus conflicts with our holding in the instant case, it is overruled.

19

admissible. Neither case, however, indicates that evidence of "other acts" is exempt from scrutiny under or compliance with MRE 404(b) simply because it meets this definition.

*Delgado* concluded that evidence of an uncharged prior act could be admitted without reference to MCL 768.27. The decision did not address or mention MRE 404(b)—understandably, as that evidentiary rule had only recently become effective at the time of the decision, and correspondingly had not been offered at trial as a basis for the evidence's admission. And while MRE 404(b) and MCL 768.27 certainly overlap, they are not interchangeable. MCL 768.27 authorizes the admission of evidence of "like acts or other acts of [a criminal] defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question," when one or more of such matters "is material." This statutory authorization comports with and is encompassed by MRE 404(b), as made clear by that rule's enumerated list of proper purposes for admitting other-acts evidence. Unlike MCL 768.27, however, MRE 404(b)'s list of such purposes is expressly nonexhaustive, and thus plainly contemplates the admission of evidence that may fall outside the statute's articulated scope. *Delgado* thus reflects what the plain language of MRE 404(b) confirms: that MCL 768.27 does not purport to define the limits of admissibility for evidence of uncharged conduct. And while *Delgado* indicates that evidence meeting its definition of "res gestae" is potentially admissible, it does not suggest that the admissibility of all such evidence is properly evaluated without reference to MRE 404(b).

Nor do we find this proposition in *Sholl*. Unlike *Delgado*, *Sholl* does refer to MRE 404(b), albeit in passing, when noting that "there are substantial limits on the

20

admissibility of evidence concerning other bad acts." *Sholl*, 453 Mich at 741. *Sholl* then holds that, because the evidence in question satisfied *Delgado*'s "res gestae" definition, its admission was not precluded by MRE 404(b)'s "substantial limits." This conclusion, like that in *Delgado*, comports with MRE 404(b)'s inclusionary nature, recognizing that the rule does not prohibit the admission of evidence of uncharged conduct that is relevant for nonpropensity reasons. It does not, however, purport to place all evidence meeting the *Delgado/Sholl* definition of "res gestae" outside the purview of MRE 404(b).

Accordingly, we fail to see in *Delgado* and *Sholl* an exception from MRE 404(b)'s coverage for all evidence meeting their definition of "res gestae." Nor do we think that definition aptly delineates the limits of "other acts" evidence contemplated by and subject to MRE 404(b). As this Court has long recognized, and as the *Delgado/Sholl* definition reflects, the concept of "res gestae" evidence is inherently indefinite and malleable. See, e.g., *People v Kayne*, 268 Mich 186, 192; 255 NW 758 (1934) (noting that "[n]o inflexible rule has ever been, and probably one never can be, adopted as to what is a part of the res gestae," as "[i]t must be determined largely in each case by the peculiar facts and circumstances incident thereto") (quotation marks and citation omitted). This malleability, however, proves problematic when the concept is used to define the boundaries of MRE 404(b)'s applicability. For while the *Delgado/Sholl* definition of "res gestae" undoubtedly covers evidence of the "conduct at issue" in a given case, it is also readily susceptible to a much broader reading that significantly overlaps with MRE 404(b)'s established scope.

For instance, it is well recognized that MRE 404(b) governs the admission of evidence of uncharged acts that are offered "to establish a common plan, design, or

21

scheme embracing a series of crimes, including the crime charged, so related to each other that proof of one tends to prove the other." *Sabin*, 463 Mich at 62-63 (quotation marks and citations omitted). Such uncharged acts, however, could just as easily be characterized as "inextricably related" to the charged offense, *Delgado*, 404 Mich at 84, part of its "full transaction," *Sholl*, 453 Mich at 742, and necessary "to give the jury an intelligible presentation of the full context in which disputed events took place," *id*. at 741. Indeed, courts have often considered whether evidence of an "other act" is necessary to "complete the story" of the charged offense when evaluating whether that evidence has been offered for a proper nonpropensity purpose under MRE 404(b). See, e.g., *Starr*, 457 Mich at 502 (explaining that evidence of the defendant's prior sexual abuse of his half-sister was admissible under MRE 404(b)(1) because it was necessary to rebut the defendant's claim of fabrication and " '[w]ithout such evidence, the fact finder would be left with a chronological and conceptual void regarding the events' "), quoting *VanderVliet*, 444 Mich at 81; *People v Dobek*, 274 Mich App 58, 91; 732 NW2d 546 (2007) (concluding that evidence of the defendant's prior acts of sexual abuse of the complainant was admissible under MRE 404(b)(1) because the evidence was "significantly probative on issues of intent, scheme, plan, and system, as well as on credibility and presenting the full picture to the jury"), citing *People v DerMartzex*, 390 Mich 410; 213 NW2d 97 (1973); *People v Hawkins*, 245 Mich App 439, 449; 628 NW2d 105 (2001) (quoting and relying upon the *Delgado* definition of "res gestae" to conclude that other-acts evidence had been offered for a proper purpose under MRE 404(b)(1)).

The instant case well illustrates the problem. When the *Delgado/Sholl* definition of "res gestae" is read properly, Price's testimony does not fall within it, largely for the

22

same reasons it does not constitute evidence of the "conduct at issue" under MRE 404(b). The defendant's prior relationships with Price and Newsome were not part of the "full transaction" of the alleged sexual misconduct against the complainant, *Sholl*, 453 Mich at 742, nor were they "so blended or connected with" that misconduct as to be "inextricably related" to it. *Delgado*, 404 Mich at 83-84. Rather, they were wholly distinct occurrences whose only offered relevance was to explain not "the circumstances of the crime," *id*. at 83, but the circumstances of the complainant's eventual disclosure of it to Price. See also *Kayne*, 268 Mich at 192 (explaining that, at their core, "res gestae are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect") (quotation marks and citation omitted). That said, and as the reasoning of the Court of Appeals majority reflects, the *Delgado/Sholl* definition can be easily stretched to support the opposite conclusion: given that the defendant put the circumstances of the complainant's disclosure squarely in dispute at trial and used it to support his claim that the alleged conduct never occurred, evidence explaining why Price approached the complainant when she did could be characterized as "essential . . . to give the jury an intelligible presentation of the full context in which disputed events took place," *Sholl*, 453 Mich at 741, and to "complete the story" of the allegations, *Delgado*, 404 Mich at 83. The *Delgado/Sholl* definition of "res gestae" is thus indefinite and malleable enough to sweep Price's testimony within its scope, despite the fact that it is plainly "other acts" evidence as contemplated by MRE 404(b)—resulting in the Court of Appeals majority's

23

confused determination that the testimony both was and was not evidence governed by that rule.[10]

As a number of other jurisdictions have recognized, the danger such confusion poses to the integrity of MRE 404(b) is substantial; using the *Delgado/Sholl* standard to define the boundaries of that rule risks unduly eroding the rule's plainly stated scope and undermining its procedural protections. See, e.g., *Green*, 617 F3d at 246-248 (rejecting the use of a "res gestae" or "inextricably intertwined" standard to define the scope of FRE 404(b), as such a standard is "vague, overbroad, and prone to abuse, and we cannot ignore the danger it poses to the vitality of Rule 404(b)"); *United States v Boone*, 628 F3d 927, 933 (CA 7, 2010) (confirming its rejection of the "inextricable intertwinement" doctrine because it was "unhelpfully vague, and was often used as a basis to admit evidence that was more properly admissible either as direct evidence or as evidence

---

[10] This confusion, and the general notion of an "exception" from MRE 404(b) for certain other-acts evidence, may also be attributable in part to semantic vestiges of the pre-*VanderVliet* interpretation of MRE 404(b), which, as noted above, viewed the rule as one of exclusion, permitting the admission of other-acts evidence only in limited circumstances. These limited circumstances, in turn, were often characterized as "exceptions to the general exclusionary rule regarding [a] defendant's prior bad acts or crimes." *People v Flynn*, 93 Mich App 713, 718; 287 NW2d 329 (1979). See *id*. at 718-722 (explaining that, because the evidence at issue was part of the "res gestae" of the charged offenses and was relevant to demonstrate motive, it was admissible under two such "exceptions"); *Robinson*, 128 Mich App at 340 (discussing "the 'res gestae' exception to th[e] general rule" reflected by MRE 404(b) that "evidence of 'bad acts' is inadmissible to prove guilt of the charged offense"). As *VanderVliet* made clear, this nomenclature is ill suited to the prevailing understanding of MRE 404(b): the rule does not operate through "exceptions" to exclusion, but rather is an inclusionary "rule of legal relevance" that countenances the admission of all but "one category of logically relevant [other-acts] evidence." 444 Mich at 61-62.

24

under Rule 404(b)") (quotation marks omitted); *Bowie*, 344 US App DC at 38-40 (making clear that "there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b)" because "[s]uch broad exclusions have no discernible grounding in the 'other crimes, wrongs, or acts' language of the rule" and "threaten[] to override" the rule); *Ferrero*, 229 Ariz at 243 (abandoning an "inextricable intertwinement" test for 404(b) evidence due to difficulties in its proper interpretation and application); *Rose*, 206 NJ at 176-182 ("end[ing] the practice of invoking 'res gestae' as an explanation for the admission of evidence" in general, and rejecting the use of that concept to define the boundaries of 404(b) other-acts evidence). We share the apprehensions articulated by these other jurisdictions, and agree that MRE 404(b), "particularly its notice requirement, should not be disregarded on such a flimsy basis" as the "res gestae exception" invoked by the Court of Appeals majority here. *Bowie*, 344 US App DC at 40.

We therefore clarify that there is no "res gestae exception" to MRE 404(b), nor does the definition of "res gestae" set forth in *Delgado* and *Sholl* delineate the limits of that rule's applicability.[11] As the plain language of the rule makes clear, MRE 404(b)

---

[11] We stress that this clarification does not mean that all evidence meeting the *Delgado/Sholl* definition of "res gestae" is other-acts evidence subject to scrutiny under MRE 404(b); to the contrary, there is likely to be substantial overlap between evidence of acts properly understood to be part of the "res gestae" of the charged conduct, and evidence of acts that directly prove or contemporaneously facilitate the commission of that conduct. Nor does this clarification affect the substantive scope of evidence potentially admissible under the *Delgado/Sholl* definition of "res gestae"—just whether the admission of such evidence is governed by MRE 404(b) and its procedural requirements. See, e.g., *Green*, 617 F3d at 249 ("As a practical matter, it is unlikely that our holding will exclude much, if any, evidence that is currently admissible as

25

applies to evidence of "crimes, wrongs, or acts" other than the "conduct at issue in the case" that may give rise to a character-to-conduct inference. Here, the prior sexual relationships to which Price's testimony referred plainly did not constitute the "conduct at issue" in the instant case, nor did they directly evidence or contemporaneously facilitate its commission; instead, they were offered to provide inferential support for the

---

background or 'completes the story' evidence under the inextricably intertwined test. . . . [M]ost, if not all, other crimes evidence currently admitted outside the framework of Rule 404(b) as 'background' evidence will remain admissible under the approach we adopt today. The only difference is that the proponent will have to provide notice of his intention to use the evidence, and identify the specific, non-propensity purpose for which he seeks to introduce it (i.e., allowing the jury to hear the full story of the crime). Additionally, the trial court will be required to give a limiting instruction upon request.") (citation omitted).

We are also cognizant of the challenges that may attend compliance with MRE 404(b)'s procedural requirements in this context; it is not always possible for a prosecutor to anticipate before trial, for instance, what the defendant's theory of the case may be, and thus what evidence of "other acts" may prove relevant and necessary to "complete the story" of the charged conduct and the defendant's guilt. We thus take this opportunity to emphasize that, while a prosecutor's failure to comply with these procedural requirements may result in the exclusion of substantively admissible evidence, that is not their driving purpose. Rather, as we explained when enacting these requirements in *VanderVliet*, they are intended and designed to facilitate the fair and proper handling of other-acts evidence in the "extraordinarily difficult context" of a "modern day trial," and to accommodate the various circumstances and practical difficulties that may arise in that context. See *VanderVliet*, 444 Mich at 87-89. Correspondingly, MRE 404(b)(2) provides that the prosecution's notice of other-acts evidence must be "reasonable," and that provision of notice during trial rather than before it may be excused "on good cause shown." Courts should bear these provisions, and their underlying purposes, in mind when evaluating whether a prosecutor's failure to properly notice other-acts evidence before trial requires its exclusion, or instead warrants another solution.

conclusion that the "conduct at issue" occurred as alleged. Accordingly, the admissibility of that testimony was governed by MRE 404(b), including its notice requirement.

## C. THE DEFENDANT IS NOT ENTITLED TO RELIEF BASED ON THE ERRONEOUS HANDLING OF PRICE'S TESTIMONY

Thus, contrary to the determination of the Court of Appeals majority, we conclude that it was error to admit Price's testimony without reference to or compliance with MRE 404(b). Because this error was harmless, however, we agree with the Court of Appeals that the defendant is not entitled to relief.

First, this error did not result in the introduction of substantively inadmissible other-acts evidence against the defendant. Price's testimony regarding the defendant's prior relationships with her and Newsome certainly carried the risk of a character-to-conduct inference; indeed, under Price's version of events, it was that inference that led Price to wonder whether the defendant was abusing the complainant. As we have made clear, however, MRE 404(b) does not prohibit all other-acts evidence "that may . . . give rise to an inference about the defendant's character," but only that which is "relevant *solely* to the defendant's character or criminal propensity." *Mardlin*, 487 Mich at 615-616. Here, Price's testimony was "logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and [was] *not* simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character." *Id*. at 615. Namely, it was offered for the proper, nonpropensity purpose of explaining the timing and circumstances of Price's conversation with the complainant—an explanation necessary to counter the defendant's theory that the complainant's allegations of abuse were fabricated at Price's behest. See *Starr*, 457 Mich at 501-502 (testimony regarding

the defendant's prior sexual abuse of his half-sister was offered for a proper purpose under MRE 404(b)(1) because it was necessary to explain the circumstances of the complainant's disclosure of the charged abuse to her mother and to "effectively rebut [the] defendant's claim that the charges were groundless and fabricated by her mother"). Nor was the probative value of this evidence "substantially outweighed by the danger of unfair prejudice" under MRE 403. See *Mardlin*, 487 Mich at 616. Price's testimony was tailored to its proper purpose, and did not delve into unnecessary detail or unduly invite the jury to draw an impermissible character-to-conduct inference from it.[12] We do not see, and the defendant has not explained, how the testimony could have been limited to meaningfully reduce the risk of this impermissible inference while still preserving the testimony's legitimate probative value. Cf. *Crawford*, 458 Mich at 398 (finding other-acts evidence unfairly prejudicial under MRE 403 because "the specter of impermissible character evidence is likely to have significantly overshadowed any legitimate probative value" the evidence may have had).[13]

---

[12] For instance, while Price's testimony indicated that she herself had drawn such an inference on the basis of the defendant's prior relationships with her and Newsome, the testimony did not purport to validate her inference to that effect; rather, Price made clear in her testimony that she had not "notice[d] anything out of the ordinary" in the defendant's interactions with the complainant.

[13] The defendant notes that the lack of detail in Price's testimony added to its unfair prejudice, as it left the jury free to infer that the defendant's prior sexual relationships with Price and Newsome had occurred when the two women were below the age of consent, like the complainant was at the time of the alleged abuse. As noted above, the parties appear to agree that this was not the case as to Price, but there is some uncertainty regarding Newsome's age at the time of her relationship with the defendant. In any event, as the trial court made clear, the defendant was free to develop the details of these relationships at trial to the extent he felt necessary and advantageous to his defense.

Accordingly, Price's testimony was substantively admissible under MRE 404(b), notwithstanding the trial court's failure to properly analyze it under that rule. And while it was error for the prosecution not to provide, and the trial court not to require, "reasonable notice" of Price's testimony under MRE 404(b)(2), the defendant has not demonstrated that this error "more probably than not . . . was outcome determinative." *Douglas*, 496 Mich at 566 (quotation marks omitted). As discussed above, the lack of proper pretrial notice did not result in the admission of substantively improper other-acts evidence. Thus, although the defendant was not afforded his due "opportunity to marshal arguments" against its admission before it was introduced at trial, *VanderVliet*, 444 Mich at 89 n 51, he has not shown that any such arguments would have been availing, or would have affected the scope of testimony ultimately presented to the jury. Furthermore, while the defendant suffered "unfair surprise" from the unexpected introduction of this testimony at trial, *id*., he was admittedly aware of Price's general version of events before trial, including her and Newsome's prior relationships with the defendant,[14] and he has

---

While the defendant presumably would have preferred to avoid the topic of these relationships entirely, their introduction at trial resulted from his challenge to the veracity of the complainant's disclosure and to Price's motives in connection therewith. We do not see unfair prejudice in the level of detail Price offered, and the defendant chose to let stand, on this topic. See *Crawford*, 458 Mich at 398 ("Rule 403 does not prohibit prejudicial evidence; only evidence that is unfairly so.").

[14] In particular, and as the prosecutor stresses, Price's witness statement indicated that she "was sexually assaulted in the past," which gave rise to "some concerns" that prompted her conversation with the complainant; it also indicated, in a separate portion of the statement, that Price had been in touch with Newsome, "a former church member," and Newsome "said she was sexually assaulted by our pastor and I told her about my incident with our pastor too." According to the prosecutor, this witness statement, coupled with the fact that Price was an endorsed witness for the prosecution, were sufficient to provide

29

not demonstrated how he would have approached trial or presented his defense differently had he known in advance that Price would be permitted to testify as she did. For instance, the defendant has not suggested that he would have chosen to explore these prior relationships in greater depth with Price, nor has he identified or presented offers of proof from any witnesses he might have called in response to her testimony.[15] He also has not suggested that he would have altered or abandoned his theory of fabrication so as to prevent Price from offering this testimony to counter it. We therefore cannot conclude that the defendant suffered outcome-determinative prejudice from the prosecution's failure to follow, and the trial court's failure to apply, MRE 404(b)(2). Cf. *Hawkins*, 245 Mich App at 455-456 (concluding the defendant was not entitled to relief due to the prosecutor's failure to provide the notice required under MRE 404(b) because, *inter alia*, the lack of notice did not result in the prosecutor being "able to use irrelevant, inadmissible prior bad acts evidence to secure [the defendant's] conviction" and the

---

the defendant with the "reasonable notice" required under MRE 404(b)(2). We disagree. By its plain terms, MRE 404(b)(2) requires reasonable pretrial notice not only that potential other-acts evidence exists, but that the prosecutor "intends to introduce [that evidence] at trial" and has an articulable "rationale for admitting" it. Price's witness statement focused largely on detailing her role as the individual to whom the complainant first disclosed the abuse, and who then set in motion the chain of events leading to the defendant's arrest; her endorsement as a witness for the prosecution, in turn, simply reflected the unremarkable proposition that she would be called to testify as to these events. Neither her witness statement nor the fact of her endorsement suggested, let alone provided reasonable notice of, the prosecution's intent to have Price testify to her and Newsome's prior relationships with the defendant, or what the rationale for admitting that other-acts evidence might be.

[15] Indeed, in denying the defendant's motion for a mistrial, the trial court made clear that the defendant could recall Price to the stand to take further testimony on the topic and could also put on additional witnesses, but the defendant did neither.

defendant "has never suggested how he would have reacted differently to th[e] evidence had the prosecutor given notice").

Lastly, we agree with Judge SHAPIRO's concurring observation in the Court of Appeals that, irrespective of Price's testimony, the other evidence of the defendant's guilt was overwhelming. The complainant testified at length and in detail regarding the defendant's alleged acts of abuse. While the defendant denied these allegations and offered his own version of events, this was not, as he claims, a pure credibility contest. To the contrary, as the Court of Appeals majority detailed, the complainant's account was corroborated not only by other witness testimony, but by substantial objective evidence for which the defendant had no colorable explanation or response.[16] Our review of this other evidence, and the record as a whole, leaves no doubt that the erroneous handling of Price's testimony was harmless, and did not "undermine[] the reliability of the verdict" against the defendant. *Douglas*, 496 Mich at 566.

## IV. CONCLUSION

For the reasons set forth above, we agree with the Court of Appeals that the trial court erred in ruling that Price's testimony was not evidence of "other acts" as

---

[16] Namely, (1) a medical examination performed the day following the complainant's disclosure of the abuse revealed physical injuries consistent with the complainant's allegations of abuse; (2) the police recovered from the defendant's church office a semen-stained towel containing his DNA, which was consistent with the complainant's description of the defendant's use of such towels in connection with the alleged abuse; and (3) the defendant was confirmed to have a distinctive birthmark on his inner thigh near to and obscured by his scrotum, which the complainant had described in detail during a statement to the police.

31

contemplated by MRE 404(b). We conclude, however, that the Court of Appeals majority erred in determining that the testimony could nonetheless be admitted without reference to or compliance with MRE 404(b) by virtue of a "res gestae exception" to that rule, and we vacate that portion of the majority's opinion. Despite this error, we agree with the Court of Appeals that the defendant's convictions should be affirmed, as he has not demonstrated entitlement to relief based on the erroneous handling of Price's testimony.

Bridget M. McCormack
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
David F. Viviano
Richard H. Bernstein