*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 22, 2019

v

MARK GLENN WASHINGTON,

Defendant-Appellant.

No. 344003
Wayne Circuit Court
LC No. 17-010174-01-FC

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant appeals his jury-trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 240 to 480 months' imprisonment for second-degree murder and two years' imprisonment for felony-firearm. We affirm.

On appeal, defendant argues that there was insufficient evidence of his malicious intent to sustain his conviction for second-degree murder, that the trial court abused its discretion by admitting autopsy photographs and photographs of Dawn Washington (the victim) in the hospital, and that his sentence was unreasonable and disproportionate. We disagree.

## I. BACKGROUND

This matter arises from the fatal shooting of the victim. Defendant and the victim were married for approximately 20 years. However, in September 2017, the victim decided to divorce defendant and move to Georgia with a man whom she had been dating. On September 17, 2017, defendant and the victim engaged in a contentious argument about their impending divorce. When Paige Foster, the victim's friend, FaceTimed the victim, she heard defendant and the victim arguing and saw defendant point a handgun in the victim's direction. Around the same time, the victim posted a Facebook Live video on her Facebook page, which Diamond Sanders, the victim's neighbor, watched. The short video showed the victim standing in front of the bathroom mirror and arguing with a man whom she believed to be defendant. Sanders tried to show the video to her mother, Tenisha Donaldson, but the victim ended the live-stream video. Approximately 10 minutes later, Sanders heard a loud noise, similar to a gunshot. When

Donaldson looked out her front door, defendant was running toward her house. Defendant knocked on Donaldson's door to ask if she could call the police because he had shot the victim.

Once police officers arrived at the victim's house, defendant was taken into custody and transported to the police station. During a police interview with Detective Melissa Toro, defendant claimed that his handgun accidentally fired when he attempted to put it on a shelf above the toilet. When police officers entered the victim's house, they recovered a .38 Taurus revolver from the hallway floor, which contained four live rounds and one spent cartridge. The police also recovered one spent bullet casing. The victim was found lying on the floor, partially inside the bathroom and partially inside the hallway. The victim had been shot in the head. Medical personnel transported the victim to Beaumont Hospital in Dearborn. On September 19, 2017, Detective Kenneth May went to the hospital and took photographs of the victim, who was on life support and breathing through a ventilator. The victim was pronounced dead later that day.

Assistant medical examiner Dr. Avneesh Gupta determined that the cause of the victim's death was a gunshot wound above her left eye and the manner of death was homicide. The bullet penetrated the victim's skull and fractured the victim's frontal, parietal, and occipital bones. The direction of the bullet's trajectory "was from the front to the back . . . going from left to right and slightly downward." However, Dr. Gupta could not tell, with any degree of medical certainty, whether the gunshot wound to the victim's head was the result of an accident.

Jeffrey Bedell, firearms and toolsmarks examiner, determined that defendant's handgun functioned properly, and therefore, defendant had to pull the trigger to fire the handgun. However, it was possible for the handgun to unintentionally fire if defendant continually pressed the trigger and then let go of the hammer.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his conviction for second-degree murder because the prosecution failed to prove beyond a reasonable doubt that he possessed malicious intent. We disagree.

When reviewing a challenge to the sufficiency of the evidence, this Court reviews the record de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1990). This Court must review the evidence in a light most favorable to the prosecution, and ask whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hutner*, 209 Mich App 280, 282; 530 NW2d 174 (1995). It is the role of the fact-finder, rather than this Court, to determine the weight of the evidence and the credibility of witnesses. *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). This Court resolves any evidentiary conflicts in favor of the prosecution. *Id*.

For a defendant to be found guilty of second-degree murder, the prosecution must prove the following elements: " '(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse

for causing the death.' " *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015), quoting *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). " 'Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *Bergman*, 312 Mich App at 487, quoting *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). Malice is shown when the defendant intended to harm or kill the victim, or when the defendant possessed the intent to commit an act that " 'is in obvious disregard of life-endangering consequences.' " *Bergman*, 312 Mich App at 487, quoting *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002). It is often difficult to prove a defendant's intent and therefore, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

There is no dispute that defendant used a handgun to shoot and kill the victim. Defendant argues that he cannot be guilty of second-degree murder because the fatal gunshot wound was the result of an accidental shooting and therefore, there was insufficient evidence of his malicious intent. Defendant claims the handgun accidentally fired when he placed it on a shelf above the toilet.

The prosecution presented evidence that defendant and the victim were arguing about their impending divorce in front of Foster shortly before the shooting occurred. During Foster's FaceTime call with the victim, Foster saw defendant point a black handgun in the victim's direction. The victim also live-streamed her argument with defendant on Facebook, which was viewed by Sanders. Moments after the Facebook video ended, Sanders heard a loud noise, similar to a gunshot. Defendant knocked on Donaldson's door minutes later to ask if she could call the police because he had shot the victim. On the basis of this evidence alone, a rational trier of fact could conclude that defendant possessed the malicious intent to kill the victim.

Although Bedell testified that it is possible that the handgun accidentally fired when defendant placed it on the shelf, he also testified that the handgun was functioning properly and therefore, the shooter would have had to have pulled the trigger to fire the handgun. The prosecution also presented evidence that there was a layer of undisturbed dust on the shelf where defendant claimed to have placed the handgun when it fired, indicating that defendant did not put the handgun where he claimed he did. The jury considered the evidence, heard arguments on both theories, and determined that defendant possessed the requisite malice to be found guilty of second-degree murder. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence that defendant possessed the intent to kill or harm the victim or acted in obvious disregard of life-endangering consequences.[1]

---

[1] We also note that the trial court specifically instructed the jury that it could find defendant not guilty of second-degree murder if it found that the victim's death was accidental or if defendant did not intend to pull the trigger.

## III. THE PHOTOGRAPHS

Defendant next argues that the trial court abused its discretion when it admitted the hospital and autopsy photographs because they were irrelevant, cumulative, and prejudicial. We disagree that the trial court abused its discretion by admitting the autopsy photographs. We agree that the trial court abused its discretion by admitting the hospital photographs, but conclude that reversal is unwarranted because the trial court's error was harmless.

At the outset, defendant has violated MCR 7.210(C) by failing to provide this Court with the photographs that he challenges on appeal. Therefore, this Court may consider this issue abandoned or waived. See *People v Wilson*, 196 Mich App 604, 615; 493 NW2d 471 (1992).

Nevertheless, we have reviewed the record and the trial court's decision to admit the autopsy photographs and have determined that there was no error. This Court reviews a trial court's decision to admit photographic evidence for an abuse of discretion. *People v Davis*, 320 Mich App 484, 488; 905 NW2d 482 (2017), vacated in part on other grounds 503 Mich 984 (2019), citing *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995), and *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). " 'An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes.' " *Davis*, 320 Mich App at 488, quoting *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). The trial court also abuses its discretion "when it makes an error of law in the interpretation of a rule of evidence." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015), citing *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). However, even if the trial court errs in admitting evidence, this Court presumes that the error is not "a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Jackson*, 498 Mich at 257, citing *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks omitted).

"The '[g]ruesomeness' of a photograph standing alone is insufficient to merit its exclusion." *Davis*, 320 Mich App at 488, quoting *Mills*, 450 Mich at 76. The autopsy photographs were relevant to the issue of defendant's intent and directly contradicted defendant's claim that the victim died by accidental shooting. Defendant's intent was made more probable by the nature and extent of the victim's injuries as depicted in the autopsy photographs. *People v Gayheart*, 285 Mich App 202, 227-228; 776 NW2d 330 (2009) (holding that the trial court properly admitted photographs depicting the nature and extent of the victim's injuries because they were relevant to establish the defendant's intent to kill).

The prosecution may also admit photographs to corroborate a witness's testimony. *Mills*, 450 Mich at 76. Here, the prosecution admitted the autopsy photographs to corroborate the medical examiner's testimony that the victim died from a gunshot wound above her left eye, and that the fatal bullet penetrated the victim's skull and fractured her frontal, parietal, and occipital bones. The probative value of the autopsy photographs was not substantially outweighed by unfair prejudice because there was no danger that the jury would give the photographs undue weight. *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). Accordingly, the autopsy photographs were properly admitted.

Defendant further asserts that the hospital photographs, allegedly showing the victim in the intensive care unit and on a ventilator, were improperly admitted. In the photographs, the victim was alive but unresponsive. Photographs of the victim in the hospital do not seem to have "any tendency to make the existence of" defendant's intent, more or less probable without the evidence. MRE 401. Even if the hospital photographs were inadmissible, reversal is not warranted because the trial court's error was harmless in light of the overwhelming evidence of defendant's guilt. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (noting that an evidentiary error is not a basis for reversal unless it affirmatively appears that "it is more probable than not that the error was outcome determinative.").

## IV. SENTENCING

Defendant argues that although his minimum sentence was within the guidelines range, his sentence was unreasonable and violated the principle of proportionality. We disagree.

"This Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018), citing *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). This Court must affirm a minimum sentence that is within the recommended guidelines range "unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), citing MCL 769.34(10). A minimum sentence that is within the recommended guidelines range is presumptively proportionate. *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), citing MCL 769.34(10). Defendant's minimum sentence of 240 months' imprisonment was within the recommended guidelines range of 144 to 240 months. Defendant does not argue that there was an error in scoring the guidelines or claim that trial court relied on inaccurate information. Therefore, defendant's sentence must be affirmed.

We do not address defendant's challenge to the validity of MCL 769.34(10). *Schrauben* impliedly declared that MCL 769.34(10) is constitutional and consistent with *Lockridge* because it affirmed the defendant's sentence by strictly applying the statute. *Schrauben*, 314 Mich App at 196. This Court is bound to follow *Schrauben* pursuant to MCR 7.215(C)(2).[2]

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron

---

[2] MCR 7.215(C)(2) states:

A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis. The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals.