*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 29, 2020

Plaintiff-Appellee,

v

No. 349652
Muskegon Circuit Court
LC No. 18-005162-FC

DEANDRE JAMAAL BARNES,

Defendant-Appellant.

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration of a victim less than 13 years old by an individual at least 17 years old). The trial court sentenced defendant to 25 to 48 years' imprisonment. We affirm.

This case arose from allegations that defendant sexually abused his stepsister. The victim testified at trial that she was born in January 2000, and she knew defendant for her entire life. The victim stated that defendant was seven years older than her, and defendant testified that he was born in June 1993. The victim testified that her mother and father were never married, and she split time living with each parent. The victim testified that her father lived with defendant, and defendant's mother, whom her father had married. The victim stated that her stepsister and half sister also lived with her father, his wife, and defendant at times.

The victim testified that her father's family lived in a house on Jefferson Street when she was seven or eight years old. The victim stated that defendant first began touching her private areas over her clothes at the Jefferson Street house, which he did about a dozen times. The victim testified that her father's family moved to a house on Columbia Street when she was about eight years old, and they lived there until she was 10 years old. The victim stated that defendant began to touch her under her clothes at the Columbia Street house, and he eventually penetrated her vagina with his fingers. The victim testified that defendant did this between 20 and 50 times over a few months.

According to the victim, a few months after her father's family moved to the Columbia Street house, defendant began to penetrate her with his penis. The victim stated that defendant penetrated her with his penis on a weekly basis, and the incidents of penetration continued after her father's family moved to a house on Roberts Street in 2011 and then to a house on Commerce Street in 2013. The victim recalled that, while her father and his wife were on vacation for about a week after moving to the Commerce Street house, defendant penetrated her every night that they were gone. The victim stated that defendant's sexual abuse ended in 2015, when defendant moved.

The victim testified that she did not tell anyone about defendant's sexual abuse until 2018 because she was scared. The victim stated that after she told her stepsister and half sister about defendant's abuse, they all met with defendant's mother at her house to have a family meeting and inform defendant's mother of the abuse. The victim testified that, they all confronted defendant about the sexual abuse over the phone during the family meeting. The victim stated that defendant initially denied the accusations that he raped her, but he later came to the family meeting after the victim texted him that she needed closure, and he apologized. The prosecutor introduced a copy of a text message from defendant to the victim in which the defendant stated that he was young and dumb and that he was sorry.

Defendant testified that, when he arrived at his mother's house, he told his mother, sisters, and the victim that "when [he] was 14 and [the victim] was eight, [he] touched her. [He] touched her several times and that was it." He denied that he ever touched her again after the age of 14. Defendant clarified that, when he touched the victim, he rubbed her vaginal area and her breasts over her clothes. Defendant stated that he did this on several occasions while living in the Jefferson Street house in 2008. Defendant admitted that the victim's description of the first time that he touched her over her clothes was accurate. However, defendant denied ever touching the victim under her clothes or penetrating her with his penis.

The victim stated that defendant apologized at the family meeting for hurting her. The victim denied that defendant specified that he was only apologizing for touching her over her clothes when he was 14 years old. The victim's sisters agreed that defendant did not specifically admit to touching the victim over her clothes when he was 14 years old, rather he simply apologized for hurting the victim without qualification or clarification. The victim reported defendant's abuse to the police, and defendant was charged with CSC-I.

On appeal, defendant first argues that the prosecutor committed misconduct by introducing other-acts evidence at trial without providing proper notice under MRE 404(b) and MCL 768.27a. We disagree.

This issue is unpreserved because defendant did not timely and specifically object to the admission of the other-acts evidence. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Therefore, we review defendant's claim of prosecutorial misconduct related to the other-acts evidence for plain error affecting substantial rights. *Id*. An error affects substantial rights when it caused prejudice by "affect[ing] the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

This Court reviews claims of prosecutorial misconduct and preliminary issues of law de novo. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Reversal is not

-2-

warranted for instances of prosecutorial misconduct when a curative instruction could have alleviated the prejudicial effects of the error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Id*. (citations omitted).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 294 Mich App at 382. The existence of misconduct is determined on a case-by-case basis by examining the record to evaluate a prosecutor's conduct in context. *Id*. at 382-383. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," *Unger*, 278 Mich App at 236, and a "prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

In this case, defendant was charged with sexual misconduct against a minor, and the prosecutor introduced evidence that defendant committed other acts of CSC-I and CSC-II against the victim by engaging in sexual contact and sexually penetrating the victim when she was under 13 years old. See MCL 750.520b(1)(a); MCL 750.520c(1)(a). Therefore, MCL 768.27a's notice requirements govern in this case. MCL 768.27a(1) provides as follows:

> Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

The notice requirement under MCL 768.27a does not specify the manner in which notice must be provided to a defendant, it simply requires the prosecutor to disclose a summary of the expected testimony regarding the other acts. MCL 768.27a(1). Defendant fails to establish that the prosecutor did not disclose a summary of the victim's expected testimony regarding the other sexual acts that defendant committed against the victim outside the charged CSC-I penetrations. In fact, defendant's testimony at trial indicated that he was fully aware of the other acts because he admitted to touching the victim's private areas over her clothes several times when she was eight years old. Defendant even admitted that the victim's description of one such incident was accurate. Therefore, defendant failed to show that he did not have adequate notice of the other acts of sexual conduct that defendant committed against the victim. See MCL 768.27a(1).

Further, the evidence of defendant's other acts of sexual misconduct against the victim was substantively proper. "Because a defendant's propensity to commit a crime makes it more probable that he committed the charged offense," other acts admitted in this case tend to show that defendant had a propensity to commit sexual misconduct against the victim and were relevant and admissible under MCL 768.27a. *People v Watkins*, 491 Mich 450, 470-471; 818 NW2d 296 (2012). The evidence of the other acts of sexual misconduct that defendant committed by touching

-3-

the victim's private areas over her clothes, then under her clothes, and ultimately progressing to sexual penetration, was highly probative of defendant's propensity to commit the charged offense of sexual penetration of the victim when he was at least 17 years old. See MCL 750.520b(2)(b). Therefore, the other-acts evidence would likely have passed the MRE 403 balancing test because any danger of unfair prejudice did not substantially outweigh the high probative value of the evidence. See MRE 403(b). Because the other-acts evidence was substantively proper in this case, defendant's argument against its admission would not have prevailed if made before trial. See *People v Jackson*, 498 Mich 246, 278; 869 NW2d 253 (2015).

Finally, any procedural deficiency in the notice of the other-acts evidence did not prejudice defendant and was not outcome-determinative. See *Carines*, 460 Mich at 763. Failure to provide proper pretrial notice does not constitute outcome-determinative error when it does "not result in the admission of substantively improper other-acts evidence" because the defendant cannot show that arguments against the admission of the evidence before trial "would have been availing, or would have affected the scope of the testimony ultimately presented to the jury." *Jackson*, 498 Mich at 278. Additionally, a defendant is not prejudiced by a lack of proper notice when he fails to "demonstrate how he would have approached trial or presented his defense differently had he known in advance" that the other-acts evidence would be admitted. *Id*. at 278-279.

Defendant failed to show that he would have approached the trial differently or changed his defense strategy if he had notice of the other-acts evidence sooner. See *id*. at 278-279. In fact, defendant admitted to touching the victim's private areas over her clothes before he was 17 years old and used this admission as an important element of his defense strategy. Specifically, defendant used his admission to the other, lesser act of sexual misconduct to explain the apology that he made to victim in person and in a text message admitted at trial, so that the jury did not think that he was apologizing for sexually penetrating the victim. Because defendant actually used the other-acts evidence as a part of his defense strategy at trial, it cannot be shown that defendant suffered outcome-determinative prejudice from any lack of proper notice. See *id*. at 279.

Next, defendant argues that the prosecutor committed misconduct by improperly vouching for the credibility of the victim during closing arguments. We disagree.

A prosecutor may argue all reasonable inferences that arise from the evidence offered at trial, "and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66. Although "a prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness," the prosecutor "may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witness the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

In this case, defendant argues that the prosecutor "continually vouched for the credibility of his witnesses [during closing arguments] and stated that [defendant] was lying until finally defense counsel objected." During closing arguments, the prosecutor argued that defendant's claim that he touched the victim over her clothes but did not penetrate her was not true. Then, the prosecutor stated that one thing that the jurors would need to consider regarding the trial court's jury instructions, was "that there's no reason for [them] to require any other evidence other than [the victim] and she is to be believed because she's telling the truth. And we don't have to prove

that [the victim] resisted in any way." The prosecutor correctly stated, and the trial court did in fact instruct the jury, that it was "not necessary that there be evidence other than the testimony of [the victim]" and that "the prosecutor does not have to prove that [the victim] resisted the defendant."

During closing argument, the prosecutor also explained the fact that the jury could find defendant guilty of the lesser included offense of second degree criminal sexual conduct (CSC-II), rather than CSC-I, as follows:

> The real difference between the two are penetration, did he have intercourse with her. Second degree requires sexual conduct. First degree, penetration. But don't— don't let [defendant]'s confession on the stand yesterday sway you at all from the fact that there was penetration. He's claiming that when he was 14 years old he molested her, but he never penetrated her. So that—that is not true, okay? That was only at the beginning. That wasn't the end game for him. That was for breaking down resistence [sic]. The ultimate game was intercourse with [the victim]. That was the ultimate goal, and that's what it began with with [sic] his confession, convenient confession.

> So there's a few other things to consider in this case. One is that with regard to these instructions, one is that there's no reason for you to require any other evidence other than [the victim] and she is to be believed because she's telling the truth. And we don't have to prove that [the victim] resisted in any way.

The prosecutor was permitted to argue that the victim had no reason to lie about her accusations against defendant, and that defendant was lying on the basis of the reasonable inferences drawn from the evidence that defendant's partial confession was a convenient tactic to avoid being convicted of a more severe offense. See *id*.; *Dobek*, 274 Mich App at 66. The prosecutor could also infer that defendant made up his version of events to explain his apology to the victim despite the contradictory accounts made by the other witnesses. See *id*. No comment on the victim's credibility versus defendant's credibility suggested that the prosecutor had some special knowledge of their actual truthfulness. See *Thomas*, 260 Mich App at 455.

To the extent that the prosecutor's statements during closing arguments constituted improper vouching, any prejudice was alleviated by "a timely objection and curative instruction." See *Unger*, 278 Mich App at 234, 237. As in *Unger*, the prosecutor's challenged statements in this case were "brief and did not likely deflect the jury's attention from the evidence presented." See *id*. at 237. Moreover, the trial court twice instructed the jury that the attorneys' statements and arguments were not evidence, and the jury was presumed to have followed these instructions. See *id*. at 234. Therefore, the prosecutor's closing arguments did not deny defendant a fair trial or affect the outcome of the proceedings. See *id*. at 237.

Next, defendant briefly argues that the prosecutor committed misconduct by waiting to amend the information to add notice of the 25-year mandatory minimum sentence under MCL 750.520b(2)(b) until after plea negotiations were concluded. However, defense counsel affirmatively stated that defendant did not have a legal objection to the amendment and that the prosecutor had a legal basis for the amendment. Defense counsel also stated that he discussed the

consequences of the amendment with defendant a couple times, and defendant understood. Thus, defendant waived his challenge to the amended Information. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

Next, defendant argues that the trial court erred by providing a confusing instruction that the jury may only convict defendant for conduct that he committed after he turned 17 years old. Defendant waived appellate review of this issue.

Before closing arguments, the trial court discussed adding a jury instruction that the trial court and attorneys drafted collaboratively about timing issues, which stated that "[f]or either criminal sexual first or second degree you must base any conviction only on defendant's—only upon defendant's actions after he was 17." Defense counsel expressed satisfaction with the proposed instruction and stated that defendant did not have any issues with the jury instructions. A defendant waives a challenge to his jury instructions when defense counsel expressly approves the jury instructions given by the trial court. *People v Eisen*, 296 Mich App 326, 329-330; 820 NW2d 229 (2012).

Defendant argues that defense counsel was ineffective by failing to object to the admission of the improper other-acts evidence and to the confusing jury instruction. We disagree.

Generally, a defendant's claim of ineffective assistance of counsel is a "mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review "for clear error the trial court's findings of fact and reviews de novo questions of law." *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014). However, because this Court denied defendant's motion to remand for an evidentiary hearing, no *Ginther*[1] hearing was held, and our review is limited to mistakes apparent on the record. See *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000) (holding that appellate review is limited to the facts on the record if an evidentiary hearing is not held).

In order to establish ineffective assistance of counsel, defendant bears the burden to show "(1) that the attorney's performance was objectively unreasonable in light of prevailing professional norms and (2) that, but for the attorney's error or errors, a different outcome reasonably would have resulted." *People v Harmon*, 248 Mich App 522, 531; 640 NW2d 314 (2001). However, defense counsel cannot be ineffective for "failing to make a futile objection." *People v Crews*, 299 Mich App 381, 401; 829 NW2d 898 (2013).

As previously discussed, the other acts in this case were admissible as listed offenses under MCL 768.27a because they were probative of defendant's propensity to commit the charged offense and the high probative value was not substantially outweighed by the danger of unfair prejudice. Because defense counsel cannot be ineffective for "failing to make a futile objection," defense counsel in this case was not ineffective by failing to object to the admissible other-acts evidence. *Crews*, 299 Mich App at 401.

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Similarly, defense counsel was not ineffective by failing to object to the instruction that the jury may only convict defendant for conduct that he committed after he turned 17 years old. Defendant does not argue on appeal that the jury instruction informing the jurors that "[they] must base any conviction only upon defendant's actions after he turned 17" was legally deficient. Rather, defendant argues that the instruction confused the jurors and left them "no choice but to find the defendant guilty" because the "jury may not have understood that [defendant] could have been held accountable for [CSC-II] in a juvenile adjudication." Basically, defendant appears to argue that the jurors felt compelled to convict defendant for his confession at trial that he touched the victim's private areas over her clothes several times when he was 14 years old, so the jurors ignored the instruction that they could only consider defendant's conduct after he turned 17 years old and convicted defendant on the basis of his confession.

However, defendant's argument is completely misplaced because the jury convicted defendant of CSC-I for penetrating the victim, not CSC-II for touching the victim. The jury's decision to convict defendant of CSC-I, rather than the lessor included offense of CSC-II, indicates that the jury did not convict defendant on the basis of his confession because defendant only admitted to touching the victim and specifically denied penetrating her. Moreover, a jury is presumed to follow its instructions and, therefore, the jury in this case would not have relied on defendant's conduct before he turned 17 years old as the basis for its verdict. See *Unger*, 278 Mich App at 234. Consequently, defendant failed to demonstrate how an objection to the challenged jury instruction would have changed the jury's verdict. See *Harmon*, 248 Mich App at 531.

Next, defendant argues that the trial court improperly assessed 50 points for OV 11 without sufficient evidence that defendant penetrated the victim more than once during the sentencing offense. We agree.

The trial court must support its factual determinations at sentencing by a preponderance of the evidence, and we review those determinations for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

Only sexual penetrations that arise out of the sentencing offense should be scored under OV 11. MCL 777.41(2)(a). Additional instances of penetration "extending beyond the sentencing offense" are accounted for in OVs 12 (contemporaneous felonious criminal acts) or 13 (continuing pattern of criminal behavior). MCL 777.41(2)(b); see also MCL 777.42; MCL 777.43.

At his sentencing hearing, defendant objected to the 50-point score for offense variable (OV) 11 because there was not sufficient evidence to support the score. The trial court upheld the scoring of OV 11 because it found "ample evidence" to support the 50-point score. However, there is nothing in the record to suggest that defendant penetrated the victim more than once during the sentencing offense, especially when the victim testified generally that defendant penetrated her on multiple occasions and on different days, but no specific incident was specified as the sentencing offense. The victim did not provide a detailed description of any specific incident of sexual penetration that occurred during the time frame for the charged offense—when the victim was less than 13 years old and defendant was at least 17 years old. Because there were insufficient

details in the record to determine whether more than one penetration occurred during any particular incident of penetration, the trial court's assessment of 50 points for OV 11 was not supported by a preponderance of the evidence.

Although the victim testified that multiple instances of penetration occurred from 2010 to 2012, "arising out of" as it applies to OV 11 means that there is a causal connection between the penetrations that is more than incidental. *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006). In *Johnson*, the Michigan Supreme Court held that two separate instances of sexual penetration did not arise out of each other. *Id*. at 102. The Supreme Court reasoned that the two penetrations occurred on different dates and the connection was only incidental. *Id*. Therefore, the *Johnson* Court concluded that OV 11 should not have been assessed any points. *Id*. Here, as in *Johnson*, the penetrations testified to by the victim occurred on different days, and the connection between them was only incidental. Therefore, the trial court erred by assessing 50 points for OV 11. See *id*.

Because there was not sufficient evidence of additional penetrations that were causally connected to an individual incident of sexual penetration, the proper score for OV 11 was zero points. See MCL 777.41. Although this scoring error changes defendant's total OV score from 70 to 20, moving him from OV Level IV to OV Level II and altering his minimum sentencing guidelines range from 51 to 85 months, to 27 to 45 months, the trial court was required to impose a mandatory 25-year minimum sentence for defendant's CSC-I conviction pursuant to MCL 750.520b(2)(b). Because the trial court did not rely on the inaccurately calculated guidelines range—as contained in defendant's PSIR—in sentencing defendant, resentencing is not required and "the remedy is to remand for the limited purpose of correcting" the erroneous information contained in the PSIR. See *Harmon*, 248 Mich App at 533-534 (holding that resentencing is not required for an inaccuracy contained in the PSIR when a trial court does not rely on the inaccurate information in sentencing a defendant; instead, the appropriate remedy is to remand for the ministerial task of correcting the PSIR).

Finally, defendant argues that the 25-year mandatory minimum sentence imposed by the trial court was disproportionate and constituted cruel and unusual punishment. We disagree.

This Court previously determined that a 25-year mandatory minimum sentence imposed for a conviction of CSC-I under MCL 750.520b(2)(b) is not disproportionate and does not violate a defendant's constitutional protections against cruel and unusual punishment. *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011). Because we are bound by our own published decisions, MCR 7.215(J)(1), we must follow our decision in *Benton* and continue to affirm 25-year mandatory minimum sentences for CSC-I convictions under MCL 750.520b(2)(b).

Affirmed, but remanded for the ministerial task of correcting the PSIR. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto