*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CORY JAMES-LEE GREENIER,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 361195
Emmet Circuit Court
LC No. 2021-005177-FH

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right following his jury convictions of two counts of felon in possession of a firearm (felon-in-possession), MCL 750.224f(1), and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 65 to 180 months' imprisonment for the felon-in-possession convictions, to be served consecutively to two years' imprisonment for each of the felony-firearm convictions. We affirm.

## I. FACTUAL BACKGROUND

This case involves the seizure of various firearms from a residence owned by a man named Jaren Kilpatrick in December 2020. The prosecutor theorized that the firearms belonged to defendant and that he had brought them to Kilpatrick's residence because the mother of his two children, Loucinda Panicali, threatened to tell police that defendant, a convicted felon, owned several guns. For purposes of this appeal, there is no dispute that defendant was a previously convicted felon and that his possession of firearms would be illegal. The prosecutor charged defendant with multiple counts of felon-in-possession and felony-firearm, along with possession of a short-barreled shotgun.

Emmet County Sheriff's Department Detective Tyler Midyett and Michigan State Police Detective Jeremiah Roberts investigated defendant's case as part of their duties as members of the Straits Area Narcotics Enforcement (SANE) unit. As part of the investigation, Detective Midyett obtained a warrant to place a GPS tracking device on defendant's vehicle. The device was installed on December 3, 2020. Soon after it was installed, the GPS tracker showed that defendant's vehicle

-1-

visited a gravel pit and remained there for approximately 30 minutes. Detectives Midyett and Roberts visited the gravel pit several days later and found freshly spent shell casings and an empty box of .762 caliber ammunition. The detectives also found Camel Blue brand cigarette butts around the area. Panicali later testified that she and defendant had previously visited the gravel pit and discharged firearms at that location and that defendant smoked Camel Blue cigarettes.

The GPS tracker also showed that on the evening of December 27, 2020, and the early morning hours of December 28, 2020, defendant's vehicle visited and left Kilpatrick's residence multiple times. Kilpatrick and defendant's girlfriend at the time, Amanda Hypes, testified that defendant brought several boxes of firearms over during these visits. When police searched Kilpatrick's residence, they found numerous firearms, including several rifles and a short-barreled shotgun.[1] Police stopped and searched defendant's vehicle later on December 28, 2020. Inside the car, they found various kinds of ammunition and a notebook containing information about ammunition calibers, some of which matched the firearms found at Kilpatrick's home.

Panicali testified that some of the handwriting in the notebook looked like defendant's handwriting. She also testified that defendant sent messages to her about firearms. The prosecutor asked Panicali what defendant said, but before she could answer, defense counsel objected:

> I guess I'm going to object, Judge. The . . . messages aren't here, they're hearsay, and this is not a direct statement of [defendant]. It's something that's open to interpretation by the witness absent the actual messages. If she's saying, "He told me this," that's one thing; if she's saying there's a there's a text message that exists that says something, at best, that's paraphrasing . . . .

The trial court stated, "Well, . . . I think if he provided messages to her, she can testify to that." Panicali then explained that she received these messages via Facebook from defendant's Facebook account. She further explained that she and defendant were going to "meet up" and "trade items." Defendant was supposed to bring firearms for Panicali. She clarified that she was supposed to trade defendant's personal items for firearms. She also agreed that in these messages, there were pictures of firearms in a box. However, instead of giving her firearms, defendant gave her "a box of countertop parts." Panicali testified that sometime in late December, she told defendant that she knew where his guns were and that she was going to turn him in to the police.

The jury found defendant guilty of two counts of felon-in-possession and two counts of felony-firearm, but not guilty of 16 additional counts of felon-in-possession, felony-firearm, and possession of a short-barreled shotgun. At sentencing, defendant challenged the assessment of 25 points for offense variable (OV) 19. The prosecutor argued that 25 points should be assessed because defendant, while in jail, had helped another inmate, Shane Crowell, escape from a cell and attack another inmate.

---

[1] Kilpatrick testified that in addition to the firearms, police also seized methamphetamine at the residence. He pleaded guilty to attempted possession of methamphetamine, and testified against defendant as part of that plea agreement.

The trial court delayed sentencing and convened an evidentiary hearing to address the incident. Surveillance footage of the incident presented at the hearing showed many inmates moving around "pod one" of the jail. There was an access door that connected pod one with pod two next door. This door was kept locked and inaccessible to the inmates. At one point, the footage showed defendant standing by the door, getting down on the floor, and looking underneath it. His hands were obscured by a table. The footage showed another inmate place what appears to be a checkerboard underneath the door, with defendant standing close by. Approximately an hour and a half later, Crowell breached the door, entered pod two, and attacked another inmate. Defendant was on the upper level of pod one at that point. Sergeant Michael Welch, who worked at the jail where the incident had occurred, testified that in his 25 years of experience, he had never seen another situation in which an inmate was down on the floor by the access door with other inmates similarly around the door.

Sergeant Welch further testified that he found "playing cards" on the floor by the access door. He believed that the inmates "had put the cards in the . . . locking mechanism . . . and kept it from locking." Sergeant Welch concluded that based on the surveillance video, defendant, Crowell, and two other inmates "seemed to have the most to do with it. They had the most showtime around that door." However, Sergeant Welch agreed that defendant's name was not listed in the jail report regarding the incident. Defendant was never disciplined, but the other inmates were. He explained that the report had been written prior to reviewing the surveillance footage and that jail staff did not initially believe that defendant was involved. Sergeant Welch's opinion only changed after he saw the footage. Sergeant Welch also acknowledged that inmates sometimes slid messages under the access door. However, Sergeant Welch believed that all of the inmates in pod one knew about the plan to go through the door.

Defense counsel argued that these circumstances were insufficient to warrant an assessment of 25 points for OV 19. Defense counsel contended that based on the footage, defendant was not involved with Crowell's escape, and had merely stood by the door and looked under it. Moreover, defendant was on the second level when Crowell escaped. The trial court disagreed and assessed 25 points for OV 19. The trial court was persuaded that defendant's actions of regularly interacting with Crowell and looking underneath the door were enough to show that he was involved with Crowell's escape.

After sentencing, defendant, through appellate counsel, moved for a new trial or resentencing.[2] He argued that Panicali erroneously testified about the Facebook messages that she exchanged with defendant without the messages themselves being admitted, thereby violating the best-evidence rule of MRE 1002. Furthermore, defendant contended that the testimony about the

---

[2] As part of his motion for resentencing, defendant requested the jail surveillance video so that he could challenge OV 19 on appeal. The video was provided, and defendant withdrew his motion for resentencing. At the outset of this appeal, defendant stated that he had trouble obtaining this video from the prosecutor. However, the video was ultimately produced and provided to defendant. We therefore need not address those portions of defendant's brief requesting resentencing because the video was not provided to him.

gravel pit constituted other-acts evidence under MRE 404(b), but that the prosecutor had failed to provide the required notice of its intention to use such other-acts evidence. Finally, defendant noted that there was a challenge pending before our Supreme Court concerning whether multiple convictions of felon-in-possession and felony-firearm implicated the protection against double jeopardy. Defendant raised the issue in order to preserve it in case the challenge was successful.[3]

The trial court denied defendant's motion in its entirety. The trial court rejected defendant's position concerning the best-evidence rule, reasoning that even if Panicali did not testify about the contents of the messages, she still could have testified independently about the events that occurred. Regarding defendant's MRE 404(b) argument, the trial court determined that the prosecutor had indeed failed to provide proper notice. Nonetheless, the trial court concluded that defendant had failed to demonstrate plain error requiring reversal, reasoning that defendant had received notice of the gravel pit evidence long before trial and had failed to show how proper notice would have affected his trial strategy or the proceedings themselves. It further reasoned that defendant had not shown that he was actually innocent. This appeal followed.

## II. ANALYSIS

### A. OTHER-ACTS EVIDENCE

Defendant argues that the prosecutor failed to provide the requisite notice that it planned to use other-acts evidence at trial, thereby making the evidence regarding the gravel pit inadmissible. Alternatively, defendant contends that even if the evidence is not inadmissible for lack of notice, it was not properly admitted as other-acts evidence. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). When the prosecutor attempted to ask a question about who exactly was shooting the firearms at the gravel pit, defense counsel objected, reasoning that it "may be entering into testimony that may be inadmissible under MCR 404(B) [sic]" as well as "403." The prosecutor withdrew the additional question. There was no objection raised about lack of notice. Apart from that single question, defense counsel failed to raise any further objection to the remaining gravel pit evidence. Therefore, this issue is unpreserved.

We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. To affect substantial rights,

---

[3] Our Supreme Court has since declined to review the pending challenge. See *People v Monroe*, 511 Mich 1117 (2023). Thus, convicting a defendant of felony-firearm and felon-in-possession does not implicate double jeopardy. See *People v Calloway*, 469 Mich 448, 449-450; 671 NW2d 733 (2003). In his reply brief, defendant notes that current law prevents his challenge and concedes that he is not entitled to relief on these grounds. Given the state of the law and defendant's concessions, we decline to address this issue.

the error must be prejudicial. *Id.* An error is prejudicial if it "affected the outcome of the lower court proceedings." *Id.* Defendant bears the burden of showing prejudice. *Id.* Even if prejudice is shown, the reviewing court should reverse only if the "plain, forfeited error resulted in the conviction of an actually innocent defendant" or if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; alteration in original).

MRE 404(b) governs the admissibility of other-acts evidence, and provides as follows:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

(2) The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

As an initial matter, we distinguish between Panicali's testimony about the gravel pit versus the detectives' testimony and the physical evidence recovered. MRE 404(b) "only applies to evidence of crimes, wrongs, or acts other than the conduct at issue in the case that risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015) (quotation marks omitted). Defendant was on trial for possession of numerous firearms, and the prosecutor's theory was that defendant had possessed such firearms at various points throughout the course of events. These events included visiting the gravel pit and discharging firearms, attempting to trade the firearms with Panicali, and bringing the firearms to Kilpatrick's residence. Therefore, the gravel pit evidence was largely a direct part of the conduct for which defendant was on trial.

However, there was little indication that Panicali was referencing the *specific* instance in early December when the GPS tracker showed defendant's vehicle at the gravel pit during her testimony. Instead, it appears that Panicali was referencing other undated instances. We thus agree that Panicali's testimony could be characterized as other-acts evidence, and that the prosecutor failed to provide the required notice of its intent to introduce said evidence. MRE 404(b)(2) plainly requires formal notice of intent to use other-acts evidence, including a description of the general nature of the evidence that the prosecutor intends to use at trial as well as the rationale for admitting the evidence. Although the prosecutor provided its trial exhibits to defendant before trial in this instance, the prosecutor nevertheless fell short of the rule's

requirements by failing to provide a formal description of the evidence, i.e., Panicali's specific testimony, or the rationale for why the evidence should be admitted.

Even so, we agree with the trial court that defendant has not demonstrated prejudice as a result of the lack of notice. In the trial court, defendant did not explain how the lack of notice affected his trial preparation or strategy, and defendant likewise fails to make such a showing on appeal. He essentially relies on the error itself as grounds for reversal, but this is insufficient to support his claim. See *Carines*, 460 Mich at 763-764 (requiring a showing of prejudice and additional requirements even when plain error is shown). Accordingly, defendant's argument on this point necessarily fails.

Defendant similarly fails to show prejudice arising from the substantive admission of the evidence. Initially, we note that defendant argues that the prosecutor conceded that the admission of the evidence was prejudicial to defendant. However, a cursory reading of the record shows that the prosecutor never made such a bald concession. In the trial court, in its response to an argument made by defendant regarding jury compromise, the prosecutor merely presented a theory about how the jury *may* have been persuaded to convict defendant only of those counts for which there was physical evidence, other than witness testimony, tying defendant to the firearms. This included the gravel pit evidence as well as the ammunition and notebook found in defendant's vehicle.[4] Given that this was merely a prosecutorial theory, it is unclear the extent to which the jury considered the gravel pit evidence or what weight, if any, was placed on it. The jury could just as well have relied on the ammunition and notebook found in defendant's vehicle. It is equally possible that the jury believed that only some of the firearms brought to Kilpatrick's residence were possessed by defendant, or it could have based its verdict on something else entirely. Regardless, defendant's position invariably leads to speculation and requires us to impermissibly reach into the minds of the jurors. Accordingly, even assuming the gravel pit evidence was other-acts evidence, defendant has failed to demonstrate that he was prejudiced by the admission of the evidence or that the integrity of the proceedings was otherwise jeopardized. He is therefore not entitled to relief.

## B. BEST-EVIDENCE RULE

Defendant next argues that Panicali's testimony about the Facebook messages violated the best-evidence rule and that he was prejudiced as a result. We again disagree.

This issue is unpreserved because defendant failed to object on the basis of the best-evidence rule. See *Aldrich*, 246 Mich App at 113. As previously noted, we review unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

The best-evidence rule is set forth in MRE 1002. It provides that, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." MRE 1004 lists the exceptions to the rule. It states, in relevant part:

---

[4] The issue regarding jury compromise is not otherwise raised by defendant in this appeal.

An original is not required and other evidence of the contents of a writing, recording, or photograph is admissible if:

(a) *all the originals are lost or destroyed*, and not by the proponent acting in bad faith; [MRE 1004(a) (emphasis added).]

In the present case, Panicali explained that she received these messages via Facebook from defendant's Facebook account. Panicali testified that she no longer had the messages or the phones on which the messages were received. Neither defendant nor his defense counsel provided any argument, testimony, or other evidence to contradict Panicali's testimony that the Facebook messages were unavailable. Additionally, the prosecutor informed the trial court that it did not have the Facebook messages. Thus, the evidence elicited during the trial showed that the Facebook messages were no longer available or in other words, that they were lost. Although defendant may speculate that the messages were still available on Facebook servers and could be subpoenaed, he provided no evidence that this was in fact the case. Accordingly, because the record showed that the original messages were unavailable, MRE 1004(a) applied.

Further, we agree with the trial court that any error would have been harmless because Panicali could have independently testified about her agreement with defendant to trade for firearms or about her subsequent threats to tell the authorities that defendant was illegally possessing firearms. In other words, the jury could have learned of this evidence through means other than Panicali testifying about the Facebook messages. Accordingly, the testimony about the messages was essentially duplicative. Moreover, as the trial court noted, the jury not seeing the messages would have likely worked *against* Panicali's credibility and in defendant's favor. Under the circumstances, defendant has failed to show that the outcome of the case was affected by the failure to provide the Facebook messages to the jury.

C. OV 19

Finally, defendant argues that he is entitled to resentencing because the trial court erroneously assessed 25 points for OV 19. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2016) (quotation marks and citation omitted). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted). Additionally, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (quotation marks and citation omitted). A "[p]reponderance of the evidence means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008) (quotation marks and citation omitted). A defendant is entitled to resentencing when a trial court commits an error in scoring the sentencing guidelines and when this error "altered the appropriate guidelines range." *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006).

Twenty-five points are assessed under OV 19 if "[t]he offender by his or her conduct threatened the security of a penal institution or court[.]" MCL 777.49(a). "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). Post-offense conduct may be considered by the trial court when scoring OV 19. This Court has specifically noted that "[t]he aggravating factors considered in OV 19 contemplate events that almost always occur *after* the charged offense has been completed." *People v Carpenter*, 322 Mich App 523, 529-530; 912 NW2d 579 (2018) (quotation marks and citation omitted).

The footage indisputably showed that Crowell escaped through the access door, that defendant spent time around the door while another inmate appeared to place something underneath the door, that defendant got down on the floor and looked underneath the door, and that defendant continuously interacted with Crowell leading up to the escape. Defendant was not simply loitering passively around the door; rather, he took an active interest in it. Given that Crowell escaped shortly after, the timing is problematic at best. Additionally, Sergeant Welch testified that in his 25 years of experience, he had never seen a situation like this occur. Sergeant Welch concluded that defendant, Crowell, and two other inmates were the ones who were most involved with the escape. Although defendant was not disciplined by the jail, nothing in the statute indicates that this is dispositive. See MCL 777.49. Accordingly, we conclude that the trial court did not err in its determination that defendant was involved with Crowell's escape, thereby warranting the assessment of 25 points for OV 19. Defendant is not entitled to relief.

Affirmed.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney