*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2024

Plaintiff-Appellee,

v

No. 364635
Muskegon Circuit Court

CHRISTOPHER MYCHAEL BOSWORTH,

LC No. 2022-001936-FC

Defendant-Appellant.

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, Christopher Bosworth, appeals as of right his convictions of first-degree murder, MCL 750.316(1)(a); assault with intent to commit murder, MCL 750.83; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced Bosworth to life imprisonment for the first-degree murder conviction, 18 to 60 years' imprisonment for the assault with intent to murder conviction, and 2 years' imprisonment for each felony-firearm conviction. We affirm but remand for the correction of a clerical error in the judgment of sentence.

## I. BASIC FACTS

On June 15, 2020, Aquae Keyes was murdered. Jakari Robinson was arrested and charged with the murder, but was released on bond. Thereafter, during the early morning hours of August 3, 2020, Robinson and his younger brother were playing video games in their apartment when Bosworth and Aquae's brother, Antwan Keyes III (Keyes), fired multiple shots at them through a glass patio door. Robinson died from the gunshot wounds, but his brother, who was shot four times, survived.

Because of Robinson's involvement in Aquae's murder, the police interviewed Keyes and his father. Although both men denied any involvement in the shooting, Keyes told police that he was with Bosworth on the evening of the shooting. That same day Keyes made a phone call from jail and spoke with someone called "Rue," whom he instructed to make a "report." Within 90 minutes, Bosworth, who was also known as "Rue," called the police and reported that, while he

-1-

had been out of the house for a long period of time that day, someone had stolen two pistols from a lockbox in his home, including a nine-millimeter pistol that was registered in his name.

A few months later, Keyes was arrested because he was found in possession of the nine-millimeter pistol that Bosworth reported stolen. It was determined that the gun was one that had been used in the shooting of Robinson and his brother. Days later, police officers with an investigative subpoena interviewed Keyes, his father, and Bosworth about the shooting. Each denied involvement. However, when Keyes spoke to officers alone, he confessed that he and Bosworth had shot Robinson and Robinson's brother. Keyes later pleaded guilty to second-degree murder and agreed to testify at Bosworth's trial.

At trial, Keyes testified that Bosworth was involved in the shooting, that Bosworth started firing first, and that Bosworth had threatened to harm him if he testified. However, he also testified that he was the only shooter and that he had not been threatened by Bosworth. Additionally, Keyes's father testified that Keyes had told him that Bosworth was with him when he had shot and killed Robinson. A jailhouse informant also testified that Bosworth told him that he convinced Keyes that they needed to kill Robinson while he was on bond for killing Keyes' brother. Bosworth further told the informant that when they saw Robinson through the patio door Keyes hesitated to shoot, so he opened fire and then Keyes also began to fire into the apartment. Finally, circumstantial evidence linking Keyes and Bosworth to the shooting was also admitted, including that they had shut their cellular phones off and then reactivated them at approximately the same time on the night of the shooting and that the Keyes families' involvement with Bosworth increased after the shooting. The jury convicted Bosworth as charged. This appeal follows.

## II. ADMISSION OF EVIDENCE

### A. STANDARD OF REVIEW

Bosworth argues that the trial court abused its discretion by admitting testimony from Keyes that Bosworth had threatened him to prevent him from testifying at trial. He also argues that the trial court abused its discretion by admitting hearsay evidence from Keyes's father. We review for an abuse of discretion a trial court's decision to admit evidence. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013) (quotation marks and citation omitted).

### B. ANALYSIS

#### 1. OTHER-ACTS EVIDENCE

At the time of Bosworth's trial,[1] MRE 404(b)(1) provided that, generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

action in conformity therewith." Nevertheless, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1). In turn, MRE 404(b)(2) stated that the prosecution had a duty to provide the defense with written notice of its intent to introduce other-acts evidence at least 14 days in advance of trial. However, if the prosecution could show "good cause" for later notice, the court rule gave the court discretion to admit the evidence on oral notice and with a shorter notice period. MRE 404(b)(2).

In this case, the prosecution did not provide written notice 14 days in advance of trial of its intent to introduce evidence that Bosworth had threatened Keyes. And, on appeal, Bosworth contends that there was no "good cause" shown to allow for oral notice and a shorter notice period. However, a prosecutor's failure to provide proper notice under MRE 404(B)(2) does not automatically result in reversal. Rather, as our Supreme Court explained in *People v Jackson*, 498 Mich 246, 278; 869 NW2d 253 (2015), the defendant still bears the burden of showing that the error "more probably than not . . . was outcome determinative." (Quotation marks and citation omitted; alteration in original). In *Jackson*, the Court concluded that the lack of proper notice under MRE 404(b) was not outcome determinative because (1) the other-acts evidence was substantively admissible; (2) the defendant did not show that any arguments he would have marshalled against its admission would have been successful; and (3) although the defendant suffered "unfair surprise" when the evidence was admitted at trial, the record showed that he was, in fact, aware of the potential other-acts testimony before trial. *Id*. at 278-279. See also *People v Dobek*, 274 Mich App 58, 88; 732 NW2d 546 (2007) (reversal is not warranted on the basis of lack of notice under MRE 404(b)(2) where the other-acts evidence is substantively admissible and where "there is no indication that defendant would have proceeded differently with proper notice.").

Bosworth does not argue that the evidence was substantively inadmissible. Nor, has he identified any argument against its admission that he would have been able to marshal against its admission if he had been given adequate notice of the prosecutor's intent to introduce the evidence. Rather, he acknowledges that testimony that a witness has been threatened can be admitted at trial because it shows "consciousness of guilt." *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). It may also be admitted to explain a witness' inconsistent statements. *People v Clark*, 124 Mich App 410, 412-413; 335 NW2d 53 (1983). Here, the prosecutor sought to admit evidence that Keyes had been threatened to explain his reluctant and contradictory testimony. Given that Bosworth does not challenge the substantive admissibility of the evidence, and given that it plainly appears relevant, we assume for the purposes of this appeal that the evidence is, in fact, substantively admissible.

Bosworth's argument on appeal centers solely around the prosecutor's failure to provide notice of its intent to introduce evidence of the threat. He contends that the lack of notice prejudiced him because it prevented his lawyer from adequately investigating the threat so that he could impeach Keyes's testimony relating to the threat. By way of example, he suggested that he could question the individual or individuals who allegedly communicated the threat to Keyes and he could inquire then at the jail to determine whether the individual or individuals who communicated the threat were in proximity to Keyes when the threat was allegedly given. Yet,

the record reflects that the trial court permitted Bosworth's trial lawyer to voir dire Keyes outside the presence of the jury so that he could ascertain the specific details of the threat, such as when it was made and who communicated it to him. The court left open the possibility that, dependent upon Keyes's testimony, Bosworth's lawyer could investigate the threat by speaking with individuals at the jail.

Further investigation, however, proved unnecessary. On voir dire, Keyes denied that he was threatened and stated that he did not know why he had testified that he was threatened. Subsequently, on cross-examination before the jury, Keyes testified that he had not been threatened and explained that he had only claimed to be threatened so that he could gain an advantage at sentencing in his own case. Thus, despite the "unfair surprise" of having Keyes testify that he was threatened, Bosworth's lawyer was nevertheless permitted to investigate the details of the threat by questioning Keyes outside the jury's presence. And, given that Keyes recanted his testimony from the prior day, there were no additional witnesses that needed to be questioned. Thus, although the prosecutor failed to provide the notice required under MRE 404(b)(2), Bosworth has not established that the evidence was substantively inadmissible and has not demonstrated any prejudice from the lack of notice. Accordingly, we conclude that the prosecutor's failure to provide notice was harmless as there is not a reasonable probability that the lack of notice was outcome determinative. See *Jackson*, 498 Mich at 270-271.

## 2. HEARSAY

During direct examination, Keyes' father testified that Keyes admitted to him that he killed Robinson. The prosecutor then asked if Keyes had told his father that he had been with Bosworth during the shooting. Bosworth's lawyer objected on hearsay grounds. In response, the prosecutor argued that Keyes's statement to his father was not hearsay because it was a prior "inconsistent" statement used to rebut a claim of recent fabrication. The trial court overruled the objection. Keyes' father then testified that Keyes had told him that he had been with Bosworth when he shot Robinson.

On appeal, Bosworth argues that Keyes's father's testimony was improperly admitted under MRE 801(d)(1)(A). Under MRE 801(d)(1)(A), a declarant's prior inconsistent statement is not hearsay if it "was given under oath subject to the penalty of perjury at a trial, hearing, or other proceedings, or in a deposition . . . ." Here, none of Keyes's statements to his father were given while he was under oath. As a result, Keyes's father's testimony regarding Keyes's statements was not admissible as non-hearsay under MRE 801(d)(1)(A).

However, we conclude that the statement falls within the hearsay exemption set forth in MRE 801(d)(1)(B). To be admissible under MRE 801(d)(1)(B),

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation marks and citation omitted).]

Keyes testified at trial and was subject to cross examination. Moreover, Bosworth's lawyer alleged that Keyes had lied about Bosworth's involvement in the shooting in order to get a better sentence. Indeed, despite testifying that Bosworth was the second shooter, he stated on cross examination that he was the sole shooter and that Bosworth was not involved. Thus, there was a charge of recent fabrication, with the motive for the fabrication being that Keyes desired a lighter sentence. Evidence that Keyes told his father that Bosworth was involved in the shooting was a prior statement that was consistent with his Keyes' testimony implicating Bosworth in the shooting. And, considering that the statement to Keyes' father was made before Keyes was even questioned by the police regarding the shooting, it is clear that the motive to fabricate arose after the statement was made. Based upon the foregoing, we conclude that Keyes' father's testimony regarding Keyes' prior consistent statement satisfies the hearsay exemption stated in MRE 801(d)(1)(B). As such, the trial court did not abuse its discretion by admitting it.

## III. DIRECTED VERDICT

### A. STANDARD OF REVIEW

In his brief filed pursuant to Administrative Order No. 2004-6, Bosworth argues that the trial court should have granted his motion for a directed verdict because the prosecutor presented insufficient evidence to support his convictions. "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

### B. ANALYSIS

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "[T]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). Premeditation and deliberation may be inferred from all the facts of the case. *Id*. at 241. "The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citations omitted). Finally, to prove the crime of felony-firearm, the prosecution must prove beyond a reasonable doubt that the defendant carried or possessed a firearm when he committed or attempted to commit a felony. MCL 750.227b(1).

Here, the prosecution presented testimony that Robinson was arrested for the murder of Keyes' brother, but was released on bond. The night of the shooting Bosworth and Keyes turned off their cellular phones for the same period of time. Keyes testified that he and Bosworth drove to Robinson's apartment, and Bosworth admitted the same to a jailhouse informant. Each of them had a gun. They identified Robinson through a glass patio window. As explained by Keyes and the jailhouse informant, when Keyes hesitated, Bosworth started firing at Robinson through the glass. Keyes then began firing. After the shooting, they hid the guns in an alley. Later, when Keyes was at the police station he told Bosworth (whom he referred to as Rue) to make a report.

-5-

Bosworth responded by reporting that two of his guns had been stolen. One of the stolen guns was recovered on Keyes' person and it was determined to be one of the guns used in the shooting. Notwithstanding that Keyes's testimony was inconsistent, when viewing the above evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that Bosworth intentionally killed Robinson with premeditation and deliberation, that he assaulted Robinson's brother with the intent to kill him, and that he used or possessed a firearm when committing both offenses. Accordingly, the court did not err by denying the motion for a directed verdict.

## IV. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Bosworth argues that his lawyer provided him with constitutionally deficient assistance. A defendant's unpreserved claim of ineffective assistance by his or her lawyer is reviewed for errors apparent on the record. *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

### B. ANALYSIS

In order to show that his or her lawyer provided ineffective assistance, a defendant bears the burden of establishing (1) that the lawyer's performance was deficient, i.e., that it "fell below an objective standard of reasonableness," and (2) that, but for that deficient performance, the defendant was prejudiced. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). To establish prejudice, the defendant must show that, but for his lawyer's "deficient performance, a different result would have been reasonably probable." *Id*. "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Bosworth first argues that his lawyer should have challenged the trial testimony regarding statements that he had made during the investigative subpoena. He suggests that the investigative subpoena process was unfair and that he had not been placed under oath. However, no such errors are apparent from the record. Accordingly, Bosworth cannot establish the factual predicate for his ineffective-assistance claim, so he is not entitled to relief. See *id*.

Next, Bosworth asserts that his lawyer should have objected on relevancy grounds to video evidence that depicted him holding a pistol shortly before Robinson was killed. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Keyes testified that he had shot Bosworth's nine-millimeter pistol into the apartment and that Bosworth used another pistol during the shooting. The police collected both nine-millimeter and .40-caliber casings and bullets at the crime scene. Although Keyes was arrested with the nine-millimeter pistol, the other firearm was never recovered by police. Therefore, the video of Bosworth holding a pistol was relevant to show that he had another pistol in his possession before the shooting. The video further supported Keyes's testimony that Bosworth had a pistol that he had fired into the apartment. Accordingly, the evidence was relevant, and any objection

would have been futile. A defense lawyer does not provide ineffective assistance by failing to make a futile objection. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

Bosworth also argues that his lawyer failed to present an adequate defense because the lawyer was unprepared to challenge the prosecutor's evidence and did not call any defense witnesses. However, the record reflects that Bosworth's lawyer vigorously cross-examined the prosecutor's witnesses, elicited testimony that Bosworth was not involved in the shooting, questioned the motives of various prosecution witnesses, and questioned the quality and thoroughness of the police investigations. On the basis of his cross-examination of the witnesses, it is apparent that Bosworth's lawyer was prepared to challenge the prosecutor's evidence. Further, although Bosworth complains that his lawyer provided ineffective assistance by failing to call any defense witnesses, Bosworth has identified no information regarding any potential witness whom his lawyer should have called. He also fails to describe any evidence that could have cast reasonable doubt on the prosecutor's evidence that was not presented by his lawyer. We conclude that Bosworth had failed to establish that his lawyer provided ineffective assistance as a result of being unprepared and calling no defense witnesses.

Finally, defendant asserts that his lawyer was ineffective for failing to assert his right to a speedy trial. However, in order to show that his lawyer provided ineffective assistance, Bosworth bears the burden of showing that, but for his lawyer's failure to assert his right to a speedy trial, a different outcome is likely. He has not met that burden.

When considering whether a defendant's constitutional right to a speedy trial was violated, "the reviewing court is required to balance four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 3. Bosworth was arrested on December 8, 2020, and his trial began on November 28, 2022, which means that there was a delay of approximately 23 months between when he was arrested and when he was tried. Because the delay was more than eighteen months, there is a presumption of prejudice. *People v Williams*, 475 Mich 245, 262; 716 NW2d 208 (2006). The first element, therefore, would weigh in favor of a finding that a speedy-trial violation occurred. Likewise, if the defense lawyer had raised the issue on Bosworth's behalf, the third element would have weighed in favor of finding a violation.

Nevertheless, Bosworth has not established that the second and fourth elements weigh in his favor. First, given the timeframe involved, it is clear that the majority of the delay was caused by the COVID-19 pandemic. Delays caused by the COVID-19 pandemic are not attributable to the prosecution. *Id*. at ___; slip op at ___. Second, although Bosworth argues that his defense may have been affected by the delay, he has not identified any particular prejudice to his defense arising from the delay. See *id*. at ___; slip op 6 (stating that when "considering prejudice, a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges"). Here, there are no allegations that any witnesses died, that their memories were impaired, or that the witnesses were otherwise unavailable for trial as a result of the delay. Nor is there any claim that other evidence was lost or deteriorated as a result of the delay. Instead, Bosworth has only made general allegations of harm to his defense. Based upon this record, we conclude that the prosecution likely could have overcome the presumption of prejudice if the Bosworth's lawyer had raised the speedy-trial claim.

Because Bosworth cannot show that the charges would have been dismissed but for his lawyer's failure to raise the speedy-trial issue, he cannot prevail on this claim of ineffective assistance.

## V. CLERICAL ERROR

Finally, Bosworth alleges that there is a clerical error on his judgment of sentence. Specifically, he points out that paragraph 1 of the judgment of sentence stated that Count 2 is assault with intent to murder and Count 3 is felony-firearm. However, paragraph 8 of the judgment of sentence indicates that the sentence for Count 2 is two years and that the sentence for Count 3 is 18 to 60 years, when it should indicate that the sentence for Count 2 is 18 to 60 years and that the sentence for Count 3 is two years. Given that this error is apparent on the record, we remand with directions for the trial court to correct the clerical error.

Affirmed but remand to correct a clerical error on the judgment of sentence. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates